[Civ. 1419.    Second Appellate District.—December 24, 1913.]

## J. J. STADLER, Administrator of the Estate of Mary J. Quesenberry, Deceased, Appellant, v. PACIFIC ELEC-TRIC RAILWAY COMPANY (a Corporation), Respondent.

ELECTRIC RAILWAY—PASSENGER ALIGHTING FROM CAR—COLLISION WITH CAR ON ANOTHER TRACK—DURATION OF RELATION OF CARRIER AND PASSENGER.—In an action against an electric railway company for the death of a passenger who, upon alighting from a car, was struck by a car approaching on another track, an instruction that the relation of passenger and carrier did not cease at the moment she alighted from the car, but that it continued until she had a reasonable time and opportunity to leave the premises of the railway company, and that during such time the railway company owed to her the highest degree of care, embodies a correct statement of the law applicable to the case.

ID.—SPEED OF CARS—RIGHT AND DUTY OF RAILWAY CONCERNING—PLEADING—INSTRUCTIONS.—In such action an instruction that "at the place where this accident is shown to have occurred there was no law regulating the speed of cars; the defendant had a right to propel its cars at any rate of speed which was consistent with the exercise of due care in the business of railroading," is not objectionable in that propelling the cars at an unlawful speed was not an issue tendered by the pleadings, when it is alleged in the complaint that the death of the deceased was the direct and proximate result of "the negligence of defendant in the operation of its electric cars."

ID.—UNLAWFUL SPEED OF CAR—ADMISSIBILITY OF ORDINANCE TO SHOW.—Whether the rate of speed of the car was unlawful was, under the general allegation of negligence, a proper subject for inquiry, under which an ordinance fixing such rate might have been introduced.

ID.—PLEADING NEGLIGENCE—GENERAL ALLEGATIONS—EVIDENCE ADMISSIBLE UNDER.—While the specific acts constituting negligence were not alleged in the complaint, nevertheless, under the general allegation, evidence showing either that the cars were propelled at an unlawful speed contrary to law, or that, in the absence of such law, the rate of speed was such as under the circumstances constituted negligence *per se*, is competent.

ID.—DUE CARE—INSTRUCTIONS CONCERNING.—In the instruction that the "defendant had a right to propel its cars at any rate of speed which was consistent with due care in the business of railroading,"

the expression "due care" means such degree of care as the defendant owed to the deceased, and this depended upon the conclusion reached by the jury as to whether or not she was, when struck by the car, a passenger of the defendant; if she was, then "due care" was the highest degree of care.

ID.—INSTRUCTIONS—USE OF EXPRESSION "BUSINESS OF RAILROADING." The words "business of railroading" in such instruction could not refer to the operation of a freight train or to any business included within the term other than the carrying of passengers for hire, when it was alleged in both the complaint and answer that the defendant was at the time of the accident engaged as a common carrier of passengers, and the question at issue was whether the plaintiff's intestate was killed as a result of the defendant's negligence while being transported by the defendant as a passenger.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

A. E. Park, and E. B. Drake, for Appellant.

J. W. McKinley, and R. C. Gortner, for Respondent.

SHAW, J.—Action to recover damages for the death of plaintiff's intestate, Mary J. Quesenberry, which is alleged to have occurred in an accident due to defendant's negligence in the operation of its electric cars.

The case was tried before a jury which brought in a verdict for defendant. Judgment followed; plaintiff moved for a new trial, which motion was denied, and he appeals from said order denying his motion.

The facts, so far as required to elucidate the alleged errors, are as follows: At the time of the accident defendant was the owner and engaged as a common carrier of passengers in the operation of an interurban electric line of railway consisting of four tracks extending from the city of Los Angeles in a southerly direction to the city of Long Beach and other towns. At a point where the tracks cross what would constitute Thirty-ninth Street if projected, the railway company owns the right of way, which is fenced so as to prevent vehicles from crossing the tracks, but having openings therein for egress

and ingress of pedestrians. The two inner tracks were used in the operation of through cars which did not stop at Thirty-ninth Street. The through south-bound cars were operated on the westerly of these two inner tracks, and the through north-bound cars were operated on the easterly inner track. The two outer tracks were used in the operation of cars doing local business and stopping at Thirty-ninth Street for passengers getting on and off the cars at that point. For their convenience, the railway company had constructed a dirt walk or passageway some ten or fifteen feet in width and flush with and extending across the tracks, at both ends of which walk and next to the outer tracks was a dirt platform at which the local cars stopped to take on and let off passengers. On the evening in question, it being dark, the deceased boarded a local car in Los Angeles, which ran south on the westerly track, and which upon arriving at the Thirty-ninth Street station stopped at the dirt platform on the outer side of the track, where she got off the car, which proceeded on its way south. After this car left the station, she started east across the tracks, at which time a local car going north on the easterly track approached and as usual stopped at the dirt platform on the east side of the north-bound local track. At the same time a through car was approaching rapidly from the north and a through car approaching from the south, though at the time distant some hundred feet farther than was the south-bound car, the two passing each other near this point. Deceased proceeded, reaching a point between the two through tracks, which are nine and one-half feet distant apart, apparently without seeing the approach of the south-bound through car. She was dressed in black, and, owing to the fact that the track was oiled and black, was not seen by the motorman of this car until he was within seventy-five feet of the point where she was struck by the step of said south-bound car and killed. All the cars had their headlights burning, and the fact that they were at the time but a short distance away approaching the crossing, the north-bound local car having reached the dirt platform where it stopped, thus blocking her way, must have been apparent to one fully acquainted, as she is shown to have been, with the operation of the cars at that point.

Appellant's theory and that upon which the case was tried, as alleged in the complaint, was that upon plaintiff's intestate being discharged from the car upon defendant's right of way so used as a station for taking on and discharging passengers from its local cars, "and before she had been able to leave the said private right of way, . . . by reason of the negligence of defendant in the operation of its electric cars, the plaintiff's intestate was struck by one of its said electric cars being then by it operated south-bound on the west inside track." He contends that the relation of carrier and passenger between defendant and deceased did not cease until she had had reasonable time to leave the grounds of the carrier. This proposition must be conceded. At the request of plaintiff the court instructed the jury in effect that if they believed from the evidence that the decedent did not have "a reasonable time or opportunity to leave the defendant's said premises going in the direction ordinarily taken to her home, . . . before she was struck by defendant's car, then I instruct you that the duty of defendant to her as a passenger did not cease the moment she alighted from its car at the place selected by it for the discharge of its passengers, but, on the contrary, that the relation of passenger and carrier, which had theretofore existed between them while she was being carried by it in its car, remained until she had had a reasonable time or opportunity to thus leave the place where she alighted from defendant's car. In that event, it was the duty of the defendant to use the highest degree of care to make this way of egress reasonably safe; and a failure, if any, to perform such duty to her on the part of defendant was negligence." And further: "You are instructed that under the Civil Code of the state of California, . . . a carrier of persons for reward or hire must use the utmost care and diligence for their safe carriage and must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. You are, therefore, instructed that if you shall believe from the evidence that at the time plaintiff's intestate was stricken she was still a passenger of the defendant, as defined in these instructions, then I instruct you that they owed her the utmost or highest degree of care in protecting her from injury while crossing the defendant's car tracks by such passageway, even though she had left its car." We think this instruction em-

bodies a correct statement of the law applicable to the case. By it the jury was instructed that the relation of passenger and carrier did not cease at the moment she alighted from the car, but that such relation continued until she had a reasonable time and opportunity to leave the premises of defendant, and that during such time defendant owed to her the highest degree of care.    If plaintiff desired further instructions "defining the duties of a carrier to a passenger" he should have requested the court to give the same.    He did not so request.

Appellant next complains of the giving of the following instruction: "At the place where this accident is shown to have occurred there was no law regulating the speed of cars.    The defendant had a right to propel its cars at any rate of speed which was consistent with the exercise of due care in the business of railroading."    The first objection urged to this instruction is that propelling the cars at an unlawful speed was not an issue tendered by the pleadings.    It was alleged in the complaint that the death of deceased was the direct and proximate result of "the negligence of defendant in the operation of its electric cars."    While the specific acts constituting negligence were not alleged, nevertheless, under the general allegation, evidence showing either that the cars were propelled at an unlawful speed contrary to law, or that, in the absence of such law, the rate of speed was such as under the circumstances constituted negligence *per se,* was competent.    "Under our system of pleading, it is both unnecessary and improper to plead the evidence relied on to establish the ultimate facts essential to a cause of action."    (*Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663, [16 Ann. Cas. 1061, 98 Pac. 1063].)    It is true that in the case of *Cooper* v. *Los Angeles Terminal R. Co.,* 137 Cal. 229, [70 Pac. 11], there is an intimation to the effect that where the complaint failed to allege an unlawful rate of speed, but did aver that at the time of the accident, which occurred at a crossing, the train was being propelled at a rapid and dangerous rate of speed, an instruction requested that "the evidence produced upon the trial of this action fails to show that defendant's train which collided with plaintiff's vehicle, and thereby injured her, was being at the time of such collision run at an unlawful or reckless rate of speed," was properly refused upon the ground that it usurped the province of the jury whose duty it was to determine the ques-

tion as to whether the train was run at a reckless rate of speed. In the course of the opinion the court stated: "If there were no other objection to the instruction, it was properly refused because it did not apply to the cause of action set forth in the complaint." This statement, if not *dictum,* is not the law. "Evidence that the party was acting in violation or neglect of a statute or ordinance regulating the mode of conducting vehicles, is always admissible in such a case, as tending to show negligence in the one guilty of the omission." (*Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, [47 Pac. 1019].) Whether the rate of speed was unlawful was, under the general allegation of negligence, a proper subject for inquiry under which an ordinance fixing such rate might have been introduced. There is, therefore, nothing in the objection first made to the instruction. No evidence whatever was offered tending to show the existence of any law regulating the speed of cars at the point in question, and that part of the instruction complained of was strictly in accord with the facts.

The jury was told that "defendant had a right to propel its cars at any rate of speed which was consistent with due care in the business of railroading." In referring to negligence, "due care" means such care as the law requires under the particular circumstances of the case. The term is relative and its application depends upon the degree of care and vigilance which the situation of the parties and the circumstances impose. A degree of vigilance on the part of defendant which would have constituted "due care" as to a trespasser on its grounds, would not be due care as to one occupying the alleged relation of deceased to defendant, which was that of a passenger. If the measure of diligence required under the circumstances of the case is a less degree of vigilance than the highest degree of care, then the exercise of such lesser degree is "due care" in such case; but if, on the contrary, the circumstances are such as to require the highest degree of care, then less than such degree is not "due care." In this case the court instructed the jury as to what constituted the relation of passenger and carrier, and told the jury that if such relation existed between defendant and plaintiff's intestate at the time of the collision, then defendant owed her the highest or utmost degree of care. In other words, the instructions taken as a whole told the jury that

defendant was required to use due care in the rate of speed at which it propelled its cars, which degree of care, in case they found that deceased was, as claimed by plaintiff, a passenger when struck by the car, was the highest degree of care. Therefore, "due care" was such degree of care as defendant owed to deceased, and this depended upon the conclusion reached by the jury as to whether or not she was at the time when struck by the car a passenger of defendant. If she was, then "due care" was, as the court had repeatedly stated to the jury, the highest degree of care.

A further criticism of the instruction is the use therein of the words "business of railroading." It is alleged in both the complaint and answer that defendant was, at the time, engaged as a common carrier of passengers, and the question at issue was whether plaintiff's intestate was killed as a result of defendant's negligence while being transported by defendant as a passenger. Hence, the "business of railroading" could not refer to the operation of a freight train or to any business included within the term other than the carrying of passengers for hire, as alleged in the complaint and answer.

Appellant suggests that, in lieu of said instruction, the court should have instructed the jury as follows: "The defendant had a right to propel its cars at any rate of speed which was consistent with the exercise of due care in the transportation of passengers at the time and place in controversy." As stated, the instruction given could not have been understood by the jury as referring to any business transaction by defendant other than the transportation of passengers; nor could it have been understood as having reference to any other time and place than that alleged in the pleadings. Moreover, plaintiff did not ask for such modification of the instruction. While we do not regard the instruction given as a model, nevertheless, the giving of it was not error.

The order denying the motion for a new trial is affirmed.

Conrey, P. J., and James, J., concurred.