[L. A. No. 3437.   Department One.—January 5, 1915.]

GEORGE MILLER and ELNORA MILLER, Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

COMMON CARRIER—DUTY TO DELIVER PASSENGER AT DESTINATION—DURATION OF—RELATION OF PASSENGER AND CARRIER.—A carrier owes to a passenger the duty of safely delivering him at his destination, and the relation of carrier and passenger does not terminate until the passenger has had a reasonable opportunity of leaving the carrier's presence.

ID.—CARRYING PASSENGER BEYOND STATION—DUTY TO PROVIDE MEANS TO RETURN.—When the passenger is carried beyond his station, and is directed by the conductor to alight, the carrier owes him the duty of providing him with a safe means of return to the station.

ID.—NEGLIGENCE—ALIGHTING FROM CAR AT POINT BEYOND STATION—IMPLIED INVITATION TO ALIGHT — WALKING BACK OVER TRACK ACROSS TRESTLE.—A passenger in an electric railway car on a dark and stormy night, having a ticket entitling him to alight and intending to alight at a particular station, was carried beyond that point and over and across a railway trestle before the car was brought to a standstill. As the car was passing the station, he arose and took a position on or near the steps, and was told by the conductor not to get off the car until it stopped. He left the car after it had stopped and started to walk along the track and across the trestle toward the station, that being the most direct and convenient way of returning. Meanwhile the conductor had notified other passengers that the car would return to the station, and he gave the signal to back. When the car in backing had gone a part of the way over the trestle it struck and killed the passenger who had alighted. *Held,* that the warning not to leave the car until it stopped might reasonably have been understood by the passenger and by the jury to carry with it an affirmative authorization to alight when it should stop; that the invitation to leave the car on the further side of the trestle warranted the inference of an invitation to return to the station by way of the track; and that the conductor was negligent in backing the car upon the passenger without proper warning and in disregard of the action taken by him in reliance upon such invitation.

ID.—ABSENCE OF CONTRIBUTORY NEGLIGENCE.—Under such circumstances it cannot be said, as matter of law, that the passenger was guilty of contributory negligence.

ID. — EVIDENCE — CONTRADICTION OF SHOWING OF BIAS — IMMATERIAL ERROR.—The action of the trial court in sustaining objections to

certain testimony offered by defendant with a view to sustaining the credit of one of its witnesses, whom the plaintiffs, on cross-examination, had endeavored to show was biased in favor of the defendant, even if erroneous, is held to have been without prejudice.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order refusing a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Leonard & Surr, R. C. Gortner, Frank Karr, A. W. Ashburn, Jr., and W. R. Millar, for Appellant.

Willis & Guthrie, John Brown, Jr., and Daley & Byrne, for Respondents.

SLOSS, J.—The plaintiffs brought this action to recover damages for the death of their son, George E. Miller, who, it was claimed, was killed through the negligent acts of the defendant's servants. There was a verdict and judgment for seven thousand five hundred dollars in favor of the plaintiffs. The defendant appeals from the judgment and from an order denying its motion for a new trial.

The main contention of the appellant is that the evidence did not support the findings, implied in the verdict of the jury, that the defendant was guilty of negligence proximately causing George E. Miller's injuries and death, and that said George E. Miller was himself free from contributory negligence.

The defendant operated a line of electric railway from the city of San Bernardino to the town of Highland. One of the points on the line was Harlem Springs, where the defendant maintained a regular station for receiving and discharging passengers. Coming from San Bernardino the track, as it approached Harlem Springs, ran in a northeasterly direction. At the station there was a platform and a covered shed or pavilion. Beginning about forty feet beyond the end of the platform a bridge or trestle, about eighty feet in length, carried the track over a depression some few feet in depth.

On the night of December 26, 1911, at about 10 o'clock, George E. Miller (whom we shall in this opinion call Miller) took passage at San Bernardino upon a car of defendant

bound for Highland and intermediate points.  He had a ticket for Harlem Springs, and, during the progress of the journey, presented his ticket to the conductor.  There were other passengers desiring to alight at Harlem Springs, but the conductor, through an oversight, omitted to signal for a stop at that point until the car was opposite the station.  The motorman ran on until he had crossed the trestle and then brought the car to a standstill.  As the car passed Harlem Springs station, Miller, who had been sitting in the open section at the rear of the car, arose and took a position on or near the steps. The conductor told him not to get off the car until it stopped. Miller left the car after it had crossed the trestle, and started to walk along the track toward the station.  (The railroad ran upon its private right of way, and not on a public highway.) Meanwhile the conductor had notified other passengers that the car would return to the station, and he gave the signal to back.  The motorman, remaining at his post at the front of the car, reversed the power and started the car backward toward the station.  When the car had gone a part of the way over the trestle it struck Miller and killed him.  The conductor did not see Miller on the track until the car was almost upon him, and the signal to stop, which he then gave, was too late.

The instructions presented the case to the jury upon the theory, briefly stated, that the defendant was not liable unless Miller left the car and returned over the track toward the station upon the invitation, express or implied, of the conductor, and unless, further, he was struck while in the exercise of due care in consequence of the negligent act of the conductor in running the car back upon him without proper warning and in disregard of the action taken by Miller in reliance upon the said invitation.  The defendant insists that the evidence did not warrant a finding of the invitation referred to in the instructions.  But this position is not tenable on the record.  There was evidence that the night was dark, cold, and stormy.  The ground under the trestle was wet and swampy.  The most direct and convenient way of returning to the station was along the track.  Any other course would have involved a long detour through private property and across wire fences.  The warning not to leave the car until it stopped might very reasonably have been understood by Miller and by the jury to carry with it an affirmative authorization to alight when the car should stop.  And, under the circum-

stances above detailed, it was well within the province of the jury to infer that an invitation to leave the car on the further side of the bridge was an invitation to the passenger to return to the station by way of the railroad track.   The appellant's arguments on this point are, to a great extent, based upon a view of the evidence which the jury, by its verdict, rejected. Thus, it is claimed that Miller left the car before it stopped, or after the conductor had announced, in his hearing, that the car would be backed to the station.   But there was testimony, which the jury apparently accepted, to the effect that Miller got off the car just after it stopped, and that the conductor's announcement regarding the backing was not made until after Miller had alighted and disappeared into the night.

The authorities are clear to the point that a carrier owes to a passenger the duty of safely delivering him at his destination, and that the relation of carrier and passenger does not terminate until the passenger has had a reasonable opportunity of leaving the carrier's premises. (*Melton* v. *Birmingham Ry. Co.*, 153 Ala. 95, [16 L. R. A. (N. S.) 467, 45 South. 151] ; *Burke* v. *Chicago & N. Ry. Co.*, 108 Ill. App. 565; *Glenn* v. *Lake Erie etc. R. R. Co.*, (Ind App.) 73 N. E. 861; *Texas etc. Ry. Co.* v. *Dick*, 26 Tex. Civ. App. 256, 63 S. W. 895].) When the passenger is carried beyond his station, and is directed by the conductor to alight, the carrier owes him the duty of providing him with a safe means of return to the station.   (Nellis on Street Railways, 2d ed., sec. 326; *Kentucky Ry. Co.* v. *Buckler*, 125 Ky. 24, [128 Am. St. Rep. 234, 8 L. R. A. (N. S.) 555, 100 S. W. 328] ; *New York C. & St. L. Ry.* v. *Doane*, 115 Ind. 435, [7 Am. St. Rep. 451, 1 L. R. A. 157, 17 N. E. 913] ; *Adams* v. *Missouri Pac. Ry. Co.*, 100 Mo. 555, [12 S. W. 637, 13 S. W. 509].)   The cases cited by appellant are not in conflict with these views.   In *Cincinnati H. & I. R. Co.* v. *Carper*, 112 Ind. 26, [2 Am. St. Rep. 144, 13 N. E. 122, 14 N. E. 352], the injured person was on the wrong train, having boarded it by his own mistake.   It was held that the conductor was not acting within the scope of his authority in directing the mode of return to the station.   A similar situation was presented in *Finnegan* v. *Chicago etc. Ry. Co.*, 48 Minn. 378, [15 L. R. A. 399, 51 N. W. 122].   In *State* v. *Grand Trunk R. Co.*, 58 Me. 176, [4 Am. Rep. 258], as in *Buckley* v. *Old Colony R. Co.*, 161 Mass. 26, [36 N. E. 583], there was no invitation to alight, the passenger knowing that

the train had not been stopped for that purpose. Our own decision in *Benson* v. *Central Pac. R. R. Co.*, 98 Cal. 45, [32 Pac. 809, 33 Pac. 206], does not aid the appellant. There the passenger had disembarked at the station next after the one for which she was bound, and had received injuries in walking back along the track. A verdict in favor of the carrier was sustained, the court basing its ruling upon the ground that the passenger had been left in a place of safety and was not called upon to return to her destination by way of the railroad track. The case of *New York Ry. Co.* v. *Doane*, 115 Ind. 435, [7 Am. St. Rep. 451, 1 L. R. A. 157, 17 N. E. 913], is distinguished on this ground, the court citing with approval the declaration found in section 617 of Hutchinson on Carriers, that "where the passenger is carried past the platform, or usual alighting place, and is required either expressly or impliedly to leave the car without assistance, and to find his way unaided to the station, during which time he receives injury, the carrier is liable."

The appellant contends that, even if it be granted that Miller was upon the trestle by defendant's invitation, he was still, as matter of law, guilty of contributory negligence. We cannot agree with this claim. According to the finding of the jury, he was rightfully on the track, having started to walk to the station at the conductor's suggestion and without any knowledge that the car was to be backed. The conductor signalled the motorman to back by sounding three bells. But it is not clear that Miller was then in a position to have heard this signal, nor is there any evidence that he knew what it meant if he did hear it. He was on the trestle when the car came near him, and it was clearly for the jury to say whether he should have become aware of its approach sooner and whether he then acted as a reasonably prudent man would act under the circumstances.

The appellant assigns as error the action of the court in sustaining objections to certain testimony offered by defendant with a view to sustaining the credit of one of its witnesses. This witness had given testimony, which was, in fact, of slight moment. He knew little or nothing of the material facts bearing directly upon the cause of Miller's death, but had testified that, in the course of the evening, Miller had taken three or four drinks. He expressly refused to state, however, that Miller was drunk. The plaintiffs, in cross-examination,

sought to show that the witness was biased in favor of the defendant. This was done by questioning him regarding a dance-hall leased to him by the defendant. He was also asked whether he had not recently acquired an automobile. To meet this line of testimony, the defendant undertook to go into the particulars of the lease, and to show just how the automobile had been acquired. The court sustained objections to questions directed to this end. Without going into a technical consideration of the admissibility of the proposed evidence, we think the rulings, if erroneous, are not to be regarded as substantially prejudicial. Whether the witness might have been influenced in favor of defendant by his business dealings with it, or whether those dealings enabled him to acquire an automobile, had a very remote and indirect bearing on any issue in the case. The testimony given by the witness in chief was of such slight value that the verdict could hardly have been influenced by it one way or the other. Certainly a reversal would not be justified by the fact that an attempted impairment of the force of this testimony had not been overcome, even if defendant was entitled to overcome it.

Similar reasons preclude favorable consideration of the objections based on the attempt to impeach the same witness by proof of a conversation in which he referred to the receipt of a letter from the railroad company.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, C. J., concurred.

Hearing in Bank denied.