[Civ. No. 2853.    First Appellate District, Division One.—July 26, 1919.]

## PEHR TRULSSON, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE—ACTION FOR DAMAGES—PERSONAL INJURIES TO RAILROAD PASSENGER—CONTRIBUTORY NEGLIGENCE.—A railroad company is not liable for damages for personal injuries sustained by a passenger from being struck by one of the company's trains while crossing the tracks in the switch-yards of the company, where he had been permitted by the conductor to alight from a train that did not stop at that point but which he had taken by mistake, notwithstanding the train that struck him gave no warning of its approach, where such passenger, instead of taking a smooth and traveled pathway along the side of the track leading from the point where he alighted to the station, proceeded obliquely across the rough ground and raised rails of the defendant's switch-yards toward the street without using proper vigilance.

[2] ID.—EXIT FROM CARRIER'S PREMISES—DUTY OF PASSENGER TO USE ORDINARY CARE.—The fact that a carrier may owe to its passengers the highest degree of care in safeguarding their exit from the carrier's premises after leaving its trains does not absolve a passenger from the duty of himself using ordinary care under the circumstances attending his departure from the carrier's train and grounds.

[3] ID. — CONTRIBUTORY NEGLIGENCE — RAILROAD TRACK AS SIGN OF DANGER.—In this action for damages for personal injuries, the plaintiff was clearly guilty of such negligence as a matter of law as to prevent his recovery. A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion and who is possessed of ordinary intelligence that it is not safe to walk upon it, or near enough to it to be struck by a passing train, without the exercise of constant vigilance in order to be made aware of the approach of a locomotive, and thus be enabled to avoid receiving injury; and the failure of such a person so situated with reference to the railroad track to exercise such care and watchfulness, and to make use of all his senses, in order to avoid the danger incident to such situation, is negligence *per se.*

---

1. Crossing intermediate track between train and station as contributory negligence of passenger, note, 14 Ann. Cas. 24.

Duty of passenger embarking or disembarking at station to stop, look, and listen before crossing track adjacent to train, notes, 13 L. R. A. (N. S.) 621; 27 L. R. A. (N. S.) 128.

APPEAL from a judgment of the Superior Court of Santa Clara County. P. F. Gosbey, Judge. Affirmed.

The facts are stated in the opinion of the court.

John D. Willard and E. A. Douthitt for Appellant.

Louis Oneal, James P. Sex and Roy G. Hildebrand for Respondent.

RICHARDS, J.—This is an appeal from a judgment in the defendant's favor after the granting of a motion for nonsuit at the close of the plaintiff's case.

The action was one to recover damages for injuries sustained by the plaintiff through the alleged negligence of the defendant. The facts of the case are these: The plaintiff, who at the time of the injuries complained of was, and for a period of between two and three years prior thereto had been, a resident of Palo Alto, had, on the thirteenth day of March, 1917, purchased a commutation-ticket book which entitled him to a first-class daily passage upon the trains of the defendant to San Francisco and return. Thereafter and up to the 21st of March, 1917, the plaintiff had made six trips between said points upon his commutation-book. On the last-named date, at about 4 o'clock P. M., the plaintiff presented himself as a passenger at the San Francisco depot of the defendant and exhibited his book to the gate-keeper at one of the then open gateways which were there maintained leading to outgoing trains. The gatekeeper admitted him and the plaintiff boarded a train then loading with passengers, and apparently about to start on the way to his desired destination. The train presently started, the conductor began his round collecting tickets, the plaintiff presented to him his book, from which the conductor took one of the tickets representing that day's trip without comment, and returned the book. The plaintiff presently noticed that the train was not stopping at stations to take on or discharge passengers, and inquired of a brakeman the reason thereof, by whom he was then informed that the first stop of that particular train was at San Jose, which was about twenty miles beyond Palo Alto. Plaintiff thereupon demanded that the train be stopped at the Palo Alto Station and that he be let off there. The brakeman referred him

to the conductor, upon whom he made the same demand. The conductor refused to stop the train at the passenger depot at Palo Alto for the reason that the train, being a through train, was not scheduled to stop at Palo Alto. The plaintiff's commutation-book of tickets contained the following provision: "It is hereby understood that if this book is used on a train that does not stop at destination of coupons the holder will detrain at some point short of destination of coupons, or, if he elects to travel beyond such destination, he will pay conductor ticket fare from such destination to point at which he detrains." The plaintiff, however, still insisting upon being let off at the Palo Alto Station, the conductor finally consented to stop the train in the switch and freight yards, about one thousand two hundred feet beyond the regular station at Palo Alto, and allow the passenger to alight there. This he did; and the plaintiff, going at the conductor's request to the rear platform of the train, alighted on the west side of the train, which immediately moved off. The place where the plaintiff thus left the train was about fifty yards south of Forest Avenue at the point where it crosses the defendant's tracks. There was a smooth and traveled pathway leading along the side of the track from the point where the plaintiff alighted back to the Palo Alto Station, but otherwise the ground within the switch-yards was graveled and rough, and the rails stood their width above the ties so as to render walking across the tracks difficult. There is some question as to whether the plaintiff noticed the traveled walk leading back to the station but whether or not he did so he did not wish to go that way, but rather to cross obliquely to the east side of the several tracks of the defendant in order to reach Forest Avenue at that point on his way to his home, which was to the eastward of the point where he had alighted from the train. While so proceeding obliquely across the rough ground and raised rails of the defendant's switch-yards he was struck by a north-bound train of the defendant coming swiftly upon an adjacent track to that on which the former train was departing, without giving warning of its approach. For the injuries thus inflicted he brought this action.

[1] The plaintiff's first contention upon this appeal is that he was a passenger of the defendant while upon its

train, and that he continued to be such passenger after
he alighted from the defendant's train under the circum-
stances above set forth and up to such time as he would
have made his egress from the defendant's premises had
he not been struck by its train; and that being such pas-
senger, the defendant owed him the highest degree of care
and was bound to give him warning of its approaching
train, and that not having done so it is responsible for his
injuries.   Conceding, though not deciding, that the relation
of carrier and passenger continued to exist between the
plaintiff and the defendant after he had passed the station
to which his ticket entitled him to ride, and after he had
insisted upon being let off at said station notwithstanding
the terms of his commutation contract above quoted, and
after he had consented to leave and had left the defendant's
train at the place and under the circumstances above de-
tailed, we are still of the opinion that the plaintiff's own
undisputed evidence shows him to have been guilty of such
negligence proximately causing his injuries as must have
prevented his recovery in this action.   [2]   The fact that
a carrier may owe to its passengers the highest degree of
care in safeguarding their exit from the carrier's premises
after leaving its trains does not absolve the passenger from
the duty of himself using ordinary care under the circum-
stances attending his departure from the carrier's train
and grounds.   (*Holmes* v. *Southern Pacific Ry. Co.*, 97 Cal.
161, [31 Pac. 834].)   The undisputed evidence, as presented
by the plaintiff himself, discloses that however much or
little the defendant's agents may have been at fault in
permitting the plaintiff to gain access to and to take pas-
sage upon a train which was not scheduled to stop at his
station, he did in fact, and without inquiry on his own
part, board such a train, and being so on board and evidently
not desiring to be carried to its first regular place of stop-
page at San Jose, conformably to the stipulation of his
ticket-book, he demanded that the officials of the defendant
in charge of said train should depart from its schedule
and violate their instructions by stopping the train at the
Palo Alto Station; and when the conductor, declining to
comply with this demand, finally agreed to halt the train
momentarily in the freight-yards of the defendant, some
one thousand two hundred feet or more beyond said sta-

tion, the plaintiff consented to alight at said place, and did so; and, having done so, found himself standing by the west side of one of the defendant's several tracks about fifty yards from a street crossing to which, along the rails by which he stood, ran a smooth pathway to said street, and beyond it back to the station. He either did not see or did not choose to take said pathway, but started obliquely across the rough grounds and raised tracks, where no pathway or crossing was, on his way to the east side of the several tracks of the defendant at their point of intersection with said street. The plaintiff had lived in Palo Alto for several years and must have known that trains of the defendant passed frequently through that city. Being upon its tracks at a point other than the regular station or stopping place of such trains, and at a place where persons, whether or not they held the relation of passengers of the carrier, were not expected to be, and where trains were not accustomed to stop; and being minded to cross said tracks where no pathway was, it was plainly the duty of the plaintiff to walk circumspectly and to watch for approaching trains before essaying to cross the tracks of the defendant in the manner and direction which he chose to go. Had he done this he could not have failed to observe the rapidly approaching train coming from the southward along a straight track and visible for at least half a mile. If his view in that direction was obstructed by the departing train from which he had just alighted, it was all the more his duty to proceed cautiously, but instead of doing so, according to his own testimony, he started, as soon as he was clear of the rear end of said departing train, and with only a glance in its direction which gave him a view of but forty or fifty feet of the adjacent north-bound track, to walk diagonally to the northward with his back partially at least in the direction from which the north-bound train was coming, and without another look in that direction until said train was so close upon him that, although he was not yet upon the track on which it was approaching, he could not, by stepping backward, avoid being struck by it as it went by.

[3] Under the circumstances of this case as thus summarized from the plaintiff's own testimony, we think that he was clearly guilty of such negligence as a matter of law as must have prevented his recovery in this action.

The language of the case of *Holmes* v. *Southern Pacific Ry. Co., supra,* is particularly applicable to the case at bar because of the similarity of its facts, and also because the plaintiff in that case, as it is claimed in the instant one, occupied the relation of a passenger to the defendant. The court said: "A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion and who is possessed of ordinary intelligence that it is not safe to walk upon it, or near enough to it to be struck by a passing train, without the exercise of constant vigilance in order to be made aware of the approach of a locomotive, and thus be enabled to avoid receiving injury; and the failure of such a person so situated with reference to the railroad track to exercise such care and watchfulness, and to make use of all his senses, in order to avoid the danger incident to such situation, is negligence *per se.*"

It may be said, in conclusion, that the doctrine of "last clear chance," invoked for the first time by the appellant at the oral argument and in the briefs filed subsequent thereto, has no application to the facts of the case at bar.

Judgment affirmed.

Kerrigan, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1919.

Shaw, J., Melvin, J., Wilbur, J., and Olney, J., concurred. Lawlor, J., dissented.