[L. A. No. 15714. In Bank.—June 26, 1936.]

A. J. Mac GREGOR et al., Respondents, v. PACIFIC ELEC-
TRIC RAILWAY COMPANY (a Corporation), Ap-
pellant.

Frank Karr, E. E. Morris, C. W. Cornell and O. O. Collins for Appellant.

Paul Blackwood for Respondents.

SEAWELL, J.—The jury returned a verdict for plaintiffs in the sum of $4,500 for personal injuries received by plaintiff May Beatrice Mac Gregor when she was struck by an electric train of defendant Pacific Electric Railway Company. On this appeal from the judgment entered on said verdict, defendant railway company contends that plaintiff was guilty of contributory negligence as a matter of law.

The accident took place at about 2:30 o'clock on the afternoon of September 4, 1934. Defendant operates its electric trains on double tracks over its private right of way, which separates the north and south sides of San Vicente Boulevard, in the city of Santa Monica. Westbound trains use the north track, eastbound trains the south track. Plaintiff, a passenger on the westbound train from Los Angeles, left the train when it stopped west of Nineteenth Street, beyond the usual stopping place for westbound trains. As she was about to cross the southerly track, she was struck by an eastbound train. Defendant invokes the stop, look and listen rule to establish contributory negligence of plaintiff as a matter of law. Plaintiff answers that said rule does not apply

in all its strictness at railroad stations located upon railroad property; that in such cases it is for the jury to say whether the plaintiff has been guilty of contributory negligence. We are of the view in the case herein that the issue of contributory negligence was properly submitted to the jury.

The train from which plaintiff alighted, according to her testimony, came to a stop 160 feet west of the east line of Nineteenth Street, instead of at the usual stopping place east of the east line of Nineteenth Street. The engineer testified that he commenced to bring the train to a stop as soon as he received the conductor's signal, and the conductor stated that he first became aware that plaintiff desired to get off when he observed her rise in the middle of the block between Twentieth Street and Nineteenth Street, and he then gave a signal. Plaintiff testified that at Twenty-first Street she requested the conductor to let her off at the next stop, which was Nineteenth Street. She did not notice that she had been carried beyond the usual stopping place until she got off the train. ▆ Since the jury returned a verdict for plaintiff, all conflicts in the evidence must be resolved in her favor.

The private right of way of defendant is unpaved. The north and south sides of San Vicente Boulevard, adjoining the right of way, are paved. The rails stand their height above the dirt and gravel bed of the right of way. Where Nineteenth Street meets the right of way on the south side there is a row of more than twenty posts, several feet in height, which prevent vehicular traffic from crossing the tracks from the south side of San Vicente Boulevard to the north side. A similar row of posts is on the north side of the right of way. As noted above, westbound trains use the north track, eastbound trains the south track. Immediately to the north of the north rail of the northerly track, and east of the easterly line of Nineteenth Street extended, the right of way has been built up level with the rails for a space about 80 feet in length and several feet in width to provide a smooth place where passengers may board and leave westbound trains. From the westerly end of this platform a crosswalk several feet in width leads across the north and south tracks to the south side of San Vicente Boulevard. The westerly line of this crosswalk is on a line with the westerly line of the sidewalk on the east side of

Nineteenth Street. A similar platform has been provided as a stopping place for eastbound trains south of the south track, and west of the west line of Nineteenth Street extended. A crosswalk leads northerly from this built-up portion of the right of way across the south and north tracks to the north side of San Vicente Boulevard. Upon each of the platforms is a bench designed as a waiting place for passengers, and a time table is placed upon a pole between the tracks.

When plaintiff was carried west of Nineteenth Street beyond the usual stopping place for westbound trains, she alighted at the rear of the car, north of the north tracks. Plaintiff lived upon Twentieth Street, which was east of Nineteenth Street, and desired to reach Twentieth Street by walking on the south sidewalk of San Vicente Boulevard. She testified that she waited until the train from which she had just alighted moved off. Then she crossed both rails of the north track, and standing in a position between the north and south tracks, which were nine feet apart, she looked to the west and observed no train approaching. Plaintiff fixed the place where she left the train as 160 feet west of the easterly crosswalk and 105 feet west of the westerly crosswalk. She then proceeded easterly between the tracks for a distance of about 85 feet, with her back to the direction from which eastbound trains would approach, but walking close to the south rail of the north track, upon which the westbound train had just departed. When she had gone about 80 feet east she stopped, looked to the west and observed no eastbound train, and listened, but heard no whistle or bell. She was then approximately midway, or just south of midway, between the two tracks, and within a few feet of a pole between the tracks, one of a row of poles between the tracks 100 feet apart. It is contended that the row of poles interfered with her outlook. From the point near the pole where she stopped to look westward, she walked diagonally toward the west crosswalk, her back to the west. She testified that she had taken about ten steps when she was hit by the overhang of an eastbound train. It was stipulated that the train struck her approximately ten feet west of the west crosswalk, and she was then just north of the north rail of the south track.

■ The railroad station qualification to the stop, look and listen rule was recognized in this state in *Wilkinson* v.

*United Railroads,* 195 Cal. 185 [232 Pac. 131], and more recently in *Ferran* v. *Southern Pacific Co.,* 3 Cal. (2d) 350 [44 Pac. (2d) 533]. Where a person is struck by a train at a railroad stopping place while upon premises of the railroad with the object of boarding a train, or while leaving the railroad premises at the conclusion of his journey, the stop, look and listen rule does not apply in all its strictness, but it is for the jury to say whether the plaintiff exercised ordinary care for his own safety. The relation of passenger and carrier commences when the intending passenger enters upon the station premises, and continues after he leaves the train until he has had a reasonable opportunity to leave the railroad premises. (In addition to cases cited above, see *Miller* v. *Pacific Elec. Ry. Co.,* 169 Cal. 107, 110, 111 [145 Pac. 1023] ; *Stadler* v. *Pacific Elec. Ry. Co.,* 23 Cal. App. 571, 574 [138 Pac. 943].) ■ A carrier owes to its passengers the duty to "use the utmost care and diligence for their safe carriage". (Sec. 2100, Civ. Code.) Incident to its obligation to provide a safe place for passengers to board and leave trains, a railroad must operate its trains with special care at stations, to the end that passengers may come and go in safety.

■ In the Wilkinson case, *supra,* we quote from Thompson on Negligence as follows: " 'It is almost needless to add that this duty of providing safe approaches to its stations extends to the obligation of *taking care in moving its trains* so as not to injure passengers who are obliged to cross its track or tracks. . . . On the other hand, passengers who are obliged, in boarding a train or in leaving it, to cross railroad tracks intervening between the train and the station have the *right to assume* that the company will so regulate the movement of its trains on such tracks as to enable them to cross the tracks in safety.' " (195 Cal. 185, at 199, quoting from 3 Thompson on Negligence, p. 170.)

" ' . . . the passenger, while not absolved from the duty of exercising care for his own safety, has the *right to presume* that the tracks intervening between the places where he is obliged to alight and the station will be kept safe while he is crossing; so that the mere fact that he fails to look and listen for an approaching train before attempting to cross, will not necessarily be ascribed to his contributory negligence, and will not prevent a recovery of damages if he

is struck by such train.' '' (3 Thompson on Negligence, p. 175.)

In the Wilkinson case it was held that the station rule applies to electric interurban trains, as well as to steam trains. (195 Cal. 185, at 200.) ■ It is further held in that case that a distinction is not to be made between various types of stopping places, and that any place where trains usually and ordinarily stop to receive and discharge passengers constitutes a station. (195 Cal. 185, at 197.) In that case, as in the instant case, trains stopped at the station in question on signal. In the Wilkinson case there was a small waiting room about eight feet wide by ten feet long, with three blank walls, and the fourth and open side facing the tracks. In the instant case there was only a bench on the platform on each side of the tracks for passengers, but said platforms, located upon the private right of way of the railroad, nevertheless constituted a station.

Where a street railway operates on the public streets it is generally held that the station rule is inapplicable. (*Choquette* v. *Key System Transit Co.*, 118 Cal. App. 643, at 653 [5 Pac. (2d) 921].) The public has as much right to be upon the street as a person boarding or leaving a train, and in such a situation it is ordinarily held that the relation of passenger and carrier, and the ensuing obligation of the carrier to use more than ordinary care, exists only while the passenger is actually on the train. But in the instant case the tracks, station platforms and crosswalks were on the private right of way of the railway, and plaintiff was injured while on railroad premises. The row of posts on each side of the tracks prevented use of the right of way as a general intersection at Nineteenth Street.

Plaintiff herein testified that when she had proceeded about 80 feet easterly she stopped and looked to the west, and listened, but neither saw nor heard the approaching train. From that point she had taken about ten steps diagonally towards the west crosswalk when she was hit. As noted above, between the tracks there is a row of poles, 100 feet apart. Plaintiff was standing a few feet from one of these poles when she looked to the west just before proceeding diagonally. It is contended that the row of poles interfered with her outlook. The jury viewed the premises. Applying the station rule, it was for the jury to pass upon the credi-

bility of plaintiff's testimony and to determine whether she was guilty of contributory negligence.

The case of *Trulsson* v. *Southern Pacific Co.*, 42 Cal. App. 404 [183 Pac. 686], strongly relied on by appellant for reversal, is distinguishable on its facts. Plaintiff in that case was the holder of a commutation book between Palo Alto and San Francisco. He boarded a train of defendant at San Francisco, the first stop of which was San Jose. The conductor refused his demand to stop the train at Palo Alto station, but finally, upon his insistence agreed to stop it in the switch and freight yards about 1200 feet beyond the Palo Alto station. Instead of proceeding back to the station by a smooth path along the side of the track where he had alighted, plaintiff walked obliquely across the several tracks of defendant railroad which were east of the track where he had alighted, over the rough ground and raised rails of defendant's switch yard, until he was struck by a northbound train. In holding that plaintiff was guilty of contributory negligence as a matter of law, the appellate court emphasized the fact that when he was injured plaintiff was upon tracks of the railroad "at a point other than the regular station or stopping place of such trains, and at a place where persons, whether or not they held the relation of passenger of the carrier, were not expected to be, and where trains were not accustomed to stop".

In the instant case plaintiff was not struck a considerable distance beyond the station premises, outside the locale where passengers were expected to be. It was stipulated that when the train struck her she was ten feet west of the west crosswalk. She was distant from the westerly station platform only a little more than the width of the south track. It is true that she was on the rough ground between the north and south track, and that it was not to be expected that passengers ordinarily would be in that precise spot. But plaintiff's presence there was caused by the fact that the defendant railroad had let her off beyond the platform where westbound trains usually stopped, and that she was walking back to the passenger crosswalk. The exercise of the required degree of care by the employees of defendant in charge of the eastbound train for persons who might be where passengers would ordinarily be, that is, on the crosswalks or station platforms, would incidentally have protected

plaintiff in her position close to both the west crosswalk and the west station platform. As a departing passenger, plaintiff was one of the class to whom the railroad owed a duty to exercise a high degree of care.

Defendant suggests that when plaintiff got off the west-bound train she should have walked directly south or north across the tracks and right of way to the south or north side of San Vicente Boulevard. From there it would have been necessary for her either to cross San Vicente Boulevard in the middle of the block, to reach the sidewalk, or to walk along the public boulevard to Nineteenth Street. It cannot be said that plaintiff was guilty of contributory negligence as a matter of law because instead of adopting this course, she proceeded easterly between the tracks, which were nine feet apart, in the direction of defendant's westerly crosswalk, by which she could reach the intersection of Nineteenth Street and the south side of San Vicente Boulevard. For that matter if plaintiff had crossed directly where she left the train she would have been farther removed from the station platform and crosswalk than she was at the place she crossed, and thus in a place where passengers were not expected to be. There was no smooth path on the right of way immediately adjoining the tracks, which constituted the most natural way to return to the station, as there was in *Trulsson* v. *Southern Pacific Co., supra.*

We find no prejudicial error in the instructions given.

The judgment is affirmed.

Curtis, J., Shenk, J., Waste, C. J., and Langdon, J., concurred.