[Civ. No. 17298. Second Dist., Div. One. May 1, 1950.]

MELZO BURGE et al., Respondents, v. LOS ANGELES TRANSIT LINES (a Corporation) et al., Appellants.

Morrow & Trippet and James O. White, Jr., for Appellants.

Bronson, Bronson & McKinnon for Respondents.

DRAPEAU, J.—This is an action for wrongful death of Velma Virginia Burge, aged 16 years, brought by her parents, but later dismissed as to the mother, Johnnie Burge. Defendants transit company and its employee, Sommers, have appealed from a judgment entered pursuant to the verdict of the jury, and also from the order denying their motion for a new trial.

The only issue raised by this appeal is the alleged prejudicial error of the trial court in giving and refusing to give certain instructions.

The facts out of which the instant litigation arose are briefly the following: Appellant transit company maintains a private right of way with a double set of tracks running east and west parallel to Redondo Boulevard in the city of Inglewood. On the north side of the right of way just west of the point where Centinela Avenue dead-ends at Redondo Boulevard is a station for the convenience of passengers. This consists of a small wooden structure with a paved section about 50 feet long running on the outside of each set of tracks. These sections are connected at the easterly end by a macadam walk in line with the prolongation of the westerly curb line of Centinela Avenue. South of the right of way is a vacant field, several feet higher than the right of way. Redondo Boulevard and improved city property adjoin the right of way to the north.

Shortly before 8 o'clock in the evening of October 17, 1947, Velma Virginia Burge was a passenger on appellant's eastbound car, en route to a church located about two blocks north

of the station. When she prepared to leave from' the front end of the car, she discussed with the motorman the location of the church. While riding she had been visiting with friends, who knew the location of the church, and as she was leaving, she turned toward them and pointed to the right, i. e., to the south; and "then we pointed left, and then she shook her head and pointed left"; thus indicating to her friends that she understood their directions that the church was north of the right of way. The young girl alighted from the front end of the car and walked back toward the middle thereof to wave to her friends as it started and passed her on its way to Los Angeles. As she crossed the track in a northerly direction, she was struck and killed by a westbound car being operated by appellant Sommers.

Mr. Sommers, who was the only eyewitness to the accident, testified that he did not intend to stop at the station; that he was behind schedule and was running 14 minutes late; that he had traveled on the downgrade with full power on until he was within 200 feet of the station and that he coasted over this remaining distance at a speed of 20 to 25 miles per hour; that he did not see any eastbound cars as he approached or passed the station; that the last eastbound car he passed was at the railroad crossing of Redondo and Florence Avenue, seven-tenths of a mile east of the station. However, there was evidence that the car in which the girl had been riding was being followed by another car at a distance, according to one witness, of 200 feet. Another witness stated that it was one or two stops behind at the time of the accident, and that when this following car arrived at a point where the motorman could see the station, the accident had already occurred.

Mr. Sommers further testified that when he first saw decedent, she was about 15 feet from the front end of his car, opposite a path leading from the field on the southside of the right of way, and that she was "running in a northerly direc-, tion with her head slightly stooped." Also, that he was unable to reduce his speed before striking her, although he applied every stopping measure at his command. The record discloses that he stopped the car 242 feet west of the macadam walk across the east end of the station area, and that after the accident the girl's body was 74½ feet west of the same walk.

This witness also stated that the left front corner of the streetcar struck the girl, who fell onto the front end of the fender or "scooper," and that she was then thrown clear between the east and westbound tracks; that the impact was

about 25 or 30 feet west of the macadam crosswalk and north of the path leading from the vacant field. There were no lights in or around the station area, and on the night in question it was extremely dark.

Before she left home on the evening of the accident, decedent had been given a dime and two nickels, and just prior to the accident she had been chewing gum. The police officers, who investigated the accident, testified that they found a nickel, a wad of gum and a bobby pin on or near the macadam walk. They also examined the girl's shoes and found the seams clean and free of dust or dirt.

 Since the jury returned a verdict for the plaintiff, all conflicts in the evidence must be resolved in his favor. (*MacGregor* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 596, 598 [59 P.2d 123].) With that rule in mind, the evidence hereinabove briefly recited was amply sufficient to establish that decedent was a passenger on appellants' interurban carline; that she alighted from an eastbound car at appellants' station, and almost immediately she was struck by a westbound car as she was crossing the tracks within the station area on her way to the church located to the north thereof.

With respect to a similar situation, it was stated in *MacGregor* v. *Pacific Elec. Ry. Co., supra* (6 Cal.2d 596, 600): "The relation of passenger and carrier commences when the intending passenger enters the station premises and continues after he leaves the train until he has had a reasonable opportunity to leave the railroad premises . . . A carrier owes to its passengers the duty to 'use the utmost care and diligence for their safe carriage.' (Sec. 2100, Civ. Code.) Incident to its obligation to provide a safe place for passengers to board and leave trains, a railroad must operate its trains with special care at stations, to the end that passengers may come and go in safety."

It is apparently conceded by appellants that the jury here was instructed in accordance with such rules, but, they say, the jury was nowhere instructed as to the duty of care required of them if decedent was no longer a passenger, and that there was evidence from which the jury could have inferred that decedent had a reasonable opportunity to leave. Hence, it was prejudicial error for the trial court to refuse to give the following instruction:

"You are instructed that as to the passengers of a railroad company who are not actually in transit but on the railroad premises or property, the railroad is relieved of the extraor-

dinary degree of care required of it toward passengers in transit . . . and the measure of duty, in such case, of the railroad company toward the passenger . . . is only the exercise of ordinary care.''

In this connection, appellants assert that the employees of the transit company and one passenger testified that the car in which decedent was riding passed the car which struck her approximately seven-tenths of a mile from the scene of the accident, raising the inference that decedent did not go directly across the tracks but loitered on the way. There was also testimony of Shirley Erickson, a fellow passenger of decedent of. the eastbound car, that she saw the headlight of another car following the car she was on at a distance of 200 feet; and the operator of that following car testified that when he saw the westbound car it was stopped, the accident having already occurred. This latter testimony, if believed by the jury, as it apparently was, established the fact that the accident occurred shortly after the decedent alighted from the eastbound car at the station.

At appellants' request, the jury was instructed that the transit company owed no duty to nonpassengers and was also instructed as to when the passenger relationship terminated, to wit:

''The relationship of passenger and carrier, during the existence of which the carrier is obligated to exercise the highest degree of care, continues while the passenger is in the act of alighting and until she has had reasonable opportunity after leaving the streetcar to get beyond danger from its operation and until she has had reasonable opportunity to leave the railroad premises. When, however, she has alighted from the streetcar and has had the reasonable opportunity I have mentioned, from that time on she is no longer a passenger, and *the carrier is not responsible for her safe passage thereafter* to any intended point of arrival.'' (Emphasis added.)

The jury was also instructed that the relationship of carrier and passenger which had existed between the transit company and decedent was terminated if decedent had a reasonable opportunity to depart from the premises and failed to do so before the accident occurred.

As can be seen, the instructions which were given as to their duties toward nonpassengers were. much more favorable to the appellants than the requested instruction. Consequently, no prejudicial error resulted from the trial court's refusal to give it.

Appellants urge that the court erred in refusing to instruct regarding the standard of care required of decedent in the event she was not a passenger at the time of the accident, i.e.:

"I have heretofore advised you when, if at all, the relationship of passenger and carrier between Velma Virginia Burge and the Los Angeles Transit Lines terminated. If you find that the passenger relationship did terminate prior to the accident in any of the ways heretofore mentioned, then I instruct you that from the moment that the passenger relationship terminated the said Velma Virginia Burge was no more than an ordinary traveler and must be regarded as such, and the degree of care which she must exercise in crossing the tracks of the streetcar company is the same as that imposed upon any traveler and consequently the 'Stop, look and listen' rule as I have explained it to you applies in full force."

Again appellants concede that the jury was instructed that "a duty always exists for one to use ordinary care for his own safety" as well as respecting the standard of care required of a passenger at a station, but they insist that they were entitled to have the jury instructed as to the degree of care required of decedent if she had ceased to be a passenger, which included the duty to stop, look and listen.

The language of the refused instruction readily admits that the jury was instructed as to the conditions which would effect a termination of the relationship of carrier and passenger. In addition, another instruction was given (at the request of appellants) which clearly outlines the degree of care which must be exercised by an ordinary traveler in crossing tracks of an interurban transit company:

"The tracks of a railroad, such as that involved in this case, are in themselves a warning of danger. Before one enters upon the space which would be occupied by a train if it were to pass over such tracks, it is his or her duty to use every reasonable opportunity to look and listen for the approach of train, engine or car on the tracks, and to yield the right of way to any approaching train, engine or car so near as to constitute an immediate hazard.

"No failure of duty or of the customary practice on the part of those in charge of a train or of anyone handling or supervising any phase of its operation, such as a failure to sound the bell, siren or whistle as required by law, absolves a person going upon a track area, such as that involved in this case, from the duty to use ordinary care for his or her own protection."

Since the law is clear that the duty of a person to stop, look and listen does not apply in all its strictness to a passenger at a station (*Wilkinson* v. *United Railroads*, 195 Cal. 185 [232 P. 131] ; *MacGregor* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 596 [59 P.2d 123]) ; the above quoted instruction could have reference only to nonpassengers, i.e., ordinary travelers, hence it became unnecessary to give the refused instruction here under review.

Appellants next urge that failure to give the following requested instruction resulted in prejudicial error:

"One who alights from a streetcar, and for the purpose of crossing the street on the side thereof opposite his alighting, passes to the rear of the car, and before attempting to cross, neglects to look for streetcars approaching from the opposite direction, is guilty of negligence as a matter of law.

"In giving you this instruction, the Court does not mean to intimate that in its opinion, the plaintiff did conduct himself in the manner set forth as the premise for the instruction. Whether he did or did not is a question of facts for you alone to decide."

In view of the many instructions given to the jury on the questions of negligence and contributory negligence of the actors in the cause under consideration, the giving of the requested instruction could only have resulted in confusing the minds of the jurors.

Appellants argue that since some of the exhibits introduced at the trial herein show that a row of poles separates the two sets of tracks, it was error for the court to refuse to give the instruction reading as follows: "If the view of the tracks is obstructed, then greater caution is required in approaching them."

There is nothing in the record that even intimates that the row of poles obstructed the view of the tracks at the place of the accident, hence no factual basis exists for the requested instruction. However, the record does disclose that no lights were maintained at or around the station area, and on the night of the accident it was extremely dark. It would therefore appear that if the view of approaching cars was obstructed by the row of poles between the two sets of tracks, it was the duty of the transit company to warn persons crossing the track that cars were approaching the station, especially when, as here, such trains stopped only upon signal of persons desiring to alight or board the same.

Finally, appellants cite as error the giving of the following instruction:

"I instruct you that in considering whether the deceased, Velma Virginia Burge, in her conduct at the time of and immediately preceding the accident in question herein was exercising ordinary care, you may consider also whether the station conditions maintained by and the conduct of the defendants, Los Angeles Transit Lines, a corporation, and Luther Sommers, were such as to give a reasonably prudent person of the deceased's age assurance of safety in entering upon the track area, and to expressly or impliedly invite the deceased to enter that area without making the precautionary observations that one usually should make in approaching and crossing railroad tracks."

There was no error in giving the instruction complained of. The station of itself indicated that the ordinary precautions usually taken in crossing tracks were not necessary. Also, the record discloses that there was only one direction in which passengers could normally travel after alighting from the cars. To the south was an unimproved, barren field, consequently passengers alighting from eastbound cars necessarily had to cross the tracks to reach the street north of the right of way.

The record in this case discloses that a full and fair trial was accorded the parties with respect to all of the issues involved and that the jury's verdict was based upon proper instructions, the refused instructions which form the basis of this appeal being merely cumulative of rules adequately covered by the instructions which were given.

For the reasons stated, the appeal from the order denying appellants' motion for a new trial is dismissed; the judgment is affirmed.

White, P. J., and Doran, J., concurred.