Argued March 9; decided September 21, 1896.

## SMITH *v.* CITY RAILWAY COMPANY.

[46 Pac. 136.]

1. STREET RAILWAYS— CONTRIBUTORY NEGLIGENCE.— A person who, in the daytime, and in a place where the view is unobstructed, attempts to cross a street railway track immediately in front of an approaching car, without looking to see whether a car is near, and is struck and injured, is guilty of such contributory negligence as will bar a recovery, and it is for the jury to say whether such negligence occurred.

2. STREET RAILWAYS— RELATION OF PASSENGER AND CARRIER.— When a passenger on a street car has alighted in a place of safety the relation of passenger and carrier ceases, and thereafter the railway company owes her no other duty than it owes to any traveler on the highway.

From Multnomah: HARTWELL HURLEY, Judge.

This is an action by Mrs. Sarah Smith to recover damages for an injury caused by the alleged negligence of the City and Suburban Railway Company in the operation and management of one of its electric cars.  The defendant's car line on Morrison Street, in the City of Portland, consists of two tracks about four feet apart.  The cars going east use the south, and those going west the north track. On August eleventh, eighteen hundred and ninety-two, the plaintiff boarded an east bound car, intending to ride to Union Avenue, her destination being a point thereon south of Morrison Street.  At the time she took passage on the car the conductor was requested to put her off at Union Avenue, but through some mistake or carelessness, carried her by that point.  On the return trip of the car she was safely landed in the street at the intersection of

said avenue, as desired, whereupon she walked around the rear end of the car upon which she had been riding, started across the street, and in attempting to cross the south track was struck and injured by a car going east. The plaintiff's version of the accident is as follows: " I got into the car, and went until they stopped, and told me to get out. He (the conductor) put me off the car. I stepped to one side a little. He (the conductor) said: 'This is the place where you get off,' and he put me off. He helped me down. I turned myself around to look, for I felt like I was turned around; did not know which way to go. Then I made a few steps eastward and made a quick pass, right back to the end of the car,— right close to the car. I saw nothing, and heard no bell. I looked to see, —I turned around to see where I was, and when I saw where, I was going to go up south. I looked again to see if I could see anything. Seeing nothing, I thought now I will go past right quick, and when I passed the car looked as if it was an arm's length from me, the one that hit me. I had never seen it before, it was that near to me. Heard no bell or any warning given to me at all; heard nothing. My hearing is good. If there had been a bell rung I could have heard. My hearing is pretty good. The car I got out of was still standing there. I waited a short time, and it still stood there, and I thought then I will go past behind the car. I don't remember a thing that happened afterwards. When I saw the car so near me, I think I made an effort to get out of the way, but it was so close I could

do nothing. Don't know how the car struck me." The motorman in charge of the latter car says the first time he saw the plaintiff she was about twenty-five feet away from the car. "She stepped from behind the west bound car into the middle of the track on which my car was going. She stood in the middle of the track for a few seconds, and looked very much bewildered and frightened. She then recovered herself, and started to go back; but it was too late." On trial there was a verdict and judgment for the plaintiff, from which defendant appeals. REVERSED.

For appellant there was a brief by *Messrs. Dolph, Mallory, Simon and Strahan*, with an oral argument by *Mr. Rufus Mallory*.

For respondent there was a brief by *Messrs. Mitchell, Tanner and Mitchell*, with an oral argument by *Mr. Albert H. Tanner*.

Opinion by MR. JUSTICE BEAN.

1. The plaintiff claims and alleges that her injury was caused by the negligence of defendant in running its cars at a dangerous and unlawful rate of speed, in not giving timely signals of its approach to the street crossings, and in not providing the car with suitable brakes. The defendant denies these allegations of negligence on its part, and avers that the injury was caused solely by the plaintiff's own negligence in attempting to cross the track without looking or listening for the approaching car.

There was sufficient evidence to go to the jury on the question of defendant's negligence, and the principal question on this appeal is the alleged error of the trial court in refusing to instruct the jury that "If plaintiff failed to look to see if a car was approaching before she attempted to cross the track, and by reason of such failure stepped upon the track, and was struck by an approaching car, which she could have seen and avoided by looking, then she was guilty of contributory negligence, and can not recover in this action." That this proposed instruction is good law, under the facts of this case, it seems to us can admit of no reasonable question. Counsel for plaintiff seek to justify the rulings of the trial court by claiming that the imperative rule for railway crossings, that a traveler must look and listen, is not applicable as a hard and fast rule to crossings of street car tracks in the public streets of a city, but the question of care in such cases is always for the jury. Upon this subject there is some conflict in the decisions, but the doctrine which seems to be supported by authority and reason, at least with reference to electric and cable railways, is that "it is presumptively negligent on the part of a pedestrian to attempt to cross the track without looking or listening, when, if he had looked and listened, he could have discovered the approach of the car in ample time to avoid injury": Booth on Street Railway Law, § 312; *Fenton* v. *Second Avenue Railroad Company*, 126 N. Y. 625 (26 N. E. 967); *Meyer* v. *Lindell Railway Company*, 6 Mo. App. 27; *Scott* v. *Third Avenue Railway Company*,

16 N. Y. Supp. 350; *Davenport* v. *Brooklyn City Railway Company*, 100 N. Y. 632 (3 N. E. 305); *Carson* v. *Federal Street Railway Company*, 147 Pa. St. 219 (23 Atl. 369, 30 Am. St. Rep. 727, 15 L. R. A. 257); *Buzby* v. *Philadelphia Traction Company*, 126 Pa. St. 559 (17 Atl. 895, 12 Am. St. Rep. 919); *Sheets* v. *Connolly Street Railway Company*, 54 N. J. Law, 518 (24 Atl. 483); *Schulte* v. *New Orleans Railway Company*, 44 La. Ann. 509 (10 So. 811).

This doctrine is but an application of the universal rule which requires due and ordinary care in crossing a public street as in all other transactions of life. It is manifestly dangerous for a pedestrian about to cross a street car track to omit to exercise his ordinary senses, and a failure to do so is everywhere regarded as negligence on his part. He may not be required to stop, look, and listen before crossing, but it is certainly necessary for him to look where he is going, unless there is something in the circumstances of the case or in his surroundings which will excuse him. "Even on the sidewalk, specially devoted to the use of foot passengers," says Mitchell, J., "a man is bound to look where he is going, and this duty is still more imperative when he is about to cross the middle of the street, where horses, wagons, and cars have equal rights with himself, and where he is bound to take notice of such other rights, and to use his own with due regard thereto": *Buzby* v. *Philadelphia Traction Company*, 126 Pa. St. 559 (17 Atl. 895, 12 Am. St. Rep. 919). In the case before us there was nothing in the facts to excuse the plain-

tiff from exercising her senses. The accident occurred in the daytime, at a place where the view of the track was not obstructed for a space of three or four blocks, except where the car from which she had just alighted would obstruct the vision, and if she had waited until the car moved on, she would have had an uninterrupted view of this space. She did not do so, but according to her own statement, passed hurriedly along and around the rear end of the car, across the space between the two tracks, from which the approaching car could readily have been seen, and on to the track immediately in front of the car. If she did all this without looking to see where she was going, or whether a car was approaching, she was guilty of such contributory negligence as will in our opinion bar a recovery, and the jury should have been so instructed, even if it be conceded that it may not be negligence in all cases for a pedestrian to attempt to cross a street car track without looking and listening for approaching cars.

2. The defendant also requested the court to instruct the jury that the relation of passenger and carrier ended when the plaintiff had safely landed from the car, and thereafter the defendant owed her no duty other or different from that which it owed to any other pedestrian on the street. The court refused to give this instruction, and charged the jury that, as a general rule, " the duty of the carrier is completed when he takes a passenger to the point of destination and stops a sufficient time

to allow him to alight and free himself from the
car and track of the carrier, and until such rela-
tion of the passenger and carrier ceases it is the
duty of the carrier to use the highest degree of care
and diligence to protect the passenger from injury,
and to land him safely at his destination.   And
if you find from the evidence that the plaintiff had
not been properly landed by the defendant, and
freed from the car or track upon which she was
a passenger, then it was the duty of the employés
of the defendant upon the car in which she was a
passenger to use all reasonable means to prevent
the car coming in the opposite direction from run-
ning upon or striking her or doing her injury,
and if they neglected their duty in that respect,
and the injuries of plaintiff were occasioned thereby,
the defendant would be liable, and your verdict
should be for the plaintiff." By this instruction the
jury were left to determine as a matter of fact
whether the relation of passenger and carrier ex-
isted at the time of the accident, although the
pleadings and evidence both show,— and about this
there is no dispute,— that plaintiff had alighted from
the car in a place of safety, and had started on
her journey across the street, before she was struck
by the car going east.   Under the facts thus ad-
mitted, she was clearly not a passenger when the
accident occurred, and the court should have so
instructed the jury.   The relation of passenger and
carrier ceased when she alighted from the car, and
thereafter the defendant owed her no other or
different duty than it owed to any other ordinary

29 OR.— 37.

traveler: Booth on Street Railway Law, § 326; *Creamer*
v. *West End Street Railway Company*, 156 Mass. 320
(16 L. R. A.. 490, 31 N. E. 391, 32 Am. St. Rep.
456); *Buzby* v. *Philadelphia Traction Company*, 126 Pa.
St. 559 (17 Atl. 895, 12 Am. St. Rep. 919). A pub-
lic street is in no sense an approach or passenger
station for the condition or safety of which a street
railway company is responsible; and when a pas-
senger steps from a car to the street he becomes a
mere traveler upon the highway, and the company
is not responsible to him as a carrier for his safety
thereafter. Under the pleadings and the admitted
facts, the plaintiff had ceased to be a passenger be-
fore the accident occurred, and the case presented
is that of an ordinary traveler upon the highway.
There are several other errors assigned in the
record, but it is thought unnecessary to consider
them at this time, as a new trial must be ordered.

REVERSED.

Decided November 9, 1896.

## ON REHEARING.

Opinion by MR. JUSTICE BEAN.

Notwithstanding any evidence which may have
been given by the plaintiff or other witnesses tend-
ing to show that she looked for an approaching car
before attempting to cross the track, the question
as to whether she did in fact do so was for the
jury, under all the circumstances of the case, and
the court was not justified in refusing to give the in-
struction in question on the ground that there was

no evidence upon which to base it.  The case of *Texas Pacific Railway Company* v. *Gentry*, 163 U. S. 353, is not at all in point.  In that case the deceased, an employé of the defendant, was killed in crossing the track of its railroad at night while going to his work.  No one witnessed the accident, and the court held that in the entire absence of evidence as to the deceased having or not having looked for the approach of the car before crossing the track, the trial court was justified in refusing an instruction to the effect that if by looking and listening he could have known of the approach of the engine and car in time to have kept off the track and prevented the accident, and failed to do so, the jury must find for the defendant, for the reason that in such case the law presumed that he did look and listen.  In this case, however, there were numerous witnesses who saw the accident and testified to the circumstances under which it occurred, and hence there was no room for indulging in the presumption referred to.

Nor do we think the instruction in question was given in substance by the court in its general charge, to the effect that if the accident "was caused by the carelessness or negligence of the plaintiff," or if she did not "use proper care and caution to ascertain whether a car was approaching," before attempting to cross the track she can not recover.  The instruction as given contained nothing more than the featureless generality that plaintiff must exercise ordinary care and caution, leaving the jury to determine what would satisfy

that requirement, while the instruction asked and refused defines precisely what would be want of ordinary care under the circumstances of this case, and, if given, would have furnished the jury with a criterion by which to determine whether plaintiff exercised such care or not.

It is suggested that some of the expressions in the opinion in reference to the facts will, on a retrial, be greatly prejudicial to the plaintiff, and particular reference is made to the statement therein that the accident occurred at a place where the view of the track was unobstructed for a space of three or four blocks, except where the car from which the plaintiff had just alighted would obstruct the vision. This is in accordance with the facts as we understand the record before us, but if we are mistaken in that respect, no harm can come from it on another trial, which must be had on the evidence to be then presented and not as given on the first trial.

Counsel seems also to think that the court intended to criticize the plaintiff for not waiting until the car from which she had alighted moved on before attempting to cross the track, but in this he is mistaken. We only intended to state the facts from the record as we understood them, and to hold that if, under the circumstances of the case as thereby disclosed, the plaintiff attempted to cross the track without looking to see whether a car was approaching, she was guilty of such contributory negligence as would bar recovery. The petition for a rehearing is denied.        REHEARING DENIED.