[Civ No. 6038. First Appellate · District, Division One.—January 26, 1928.]

JENNIE A. RICHARDSON, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Philip M. Carey, Frank O. Nebeker and F. G. Ostrander for Appellant.

Ford, Johnson & Bourquin for Respondents.

PARKER, J., *pro tem.*—This is an action brought to recover damages on account of the death of plaintiff's husband alleged to have resulted from injuries sustained through the negligence of defendant Southern Pacific Company. The complaint included as parties defendant others than said corporation, but the said remaining defendants were not served with summons, and the cause was tried as against defendant Southern Pacific Company alone.

At the close of the plaintiff's case the trial court, on motion of defendant, ordered a nonsuit, and from the judgment entered pursuant to said order the plaintiff prosecutes this appeal.

The record discloses the grounds of nonsuit to be that the evidence introduced by plaintiff affirmatively shows as a matter of law that deceased was guilty of negligence proximately contributing to the injuries complained of. No question is presented other than the one of contributory negligence. There is sufficient evidence of plaintiff's right to maintain the action as surviving spouse, and as to her right to recover damages should the facts warrant.

The decedent James Richardson was a carpenter by trade, and for about two or three months prior to the date of the accident had been working at a place to reach which from his home it was necessary to cross Bond Street, in East Oakland, upon which the tracks of the railway service operated by defendant were laid. It was his custom to walk to work each morning. On the morning of August 6, 1923, Richardson, as usual, departed for his work, and before reaching his destination was struck by a street-car and sustained injuries from which he died within a few hours. The only eye-witness to the accident whose testimony was produced was one J. W. August, motorman on the train involved, and the facts as further narrated here are necessarily taken from the testimony of this witness.

The Southern Pacific Company's trains run along Bond Street from Fiftieth Avenue to Seminary Avenue, a distance of about two miles. The line runs along and upon Seventh Street before it turns into Bond Street. From Seventh to Bond Street it turns northeasterly for about three-quarters of a mile and runs across some private rights of way. It runs through the city of Oakland and through a thickly built-up section. The rails at Bond Street are flush with the surface. The nature of the car or cars in question may be classed as a street railway, with the qualification, however, that the cars do not stop at street intersections or on signal, but as per schedule receive and discharge passengers at fixed stations en route. The train involved herein consisted of five passenger cars equipped with air-brakes. On the morning of August 26, 1923, the train was running on usual schedule and would have made the next stop at a point called Seminary station. The rate of speed at which the train was traveling was about twenty miles per hour. The train was proceeding easterly on Bond Street. Owing to certain construction work in progress at another portion of the route the train was traveling eastward on the north track instead of being on the south track as is the general custom. The day in question was bright and clear, and with reference particularly to the operator of the train and the decedent there was nothing in the locality that could obstruct the sight or vision of either. The train was running along in its accustomed right of way, and the decedent Richardson was proceeding to his work, and every-

thing was apparently normal to this point. The testimony of the motorman in his own language now follows:

"I first saw Mr. Richardson as he was leaving the curb on the north side of Bond street. When I first saw him I was 150 feet west of him and I was traveling about twenty miles per hour. I doubt if he was walking over two miles per hour. He had a grip in his hand and was looking down towards the ground. He was walking as a man ordinarily walks and carries his head as he is walking. I could not see anything unusual in the droop of his head. I saw him all of the time from the time he left the curb until the train struck him. When he left the curb at Bond street he started in a diagonal southeasterly direction as though he intended going toward the station, which was a short distance southerly and easterly. At that time I gave a whistle to call his attention to the train's approach. I whistled immediately on seeing him. He did not heed the whistle but continued along. When he was still eight or nine feet from the northerly track I applied the emergency brake and attempted to stop the train. I continued to blow the whistle and had my foot on the bell from the time I applied the emergency brakes until the time he was struck. The track at the point where the accident occurred is straight for a distance of approximately 1000 feet, and from that distance up to the point of the accident the train would be in full view of any person standing on the curb as Mr. Richardson was. The stop that I made was the quickest that could be made with that train and with that equipment, and at the time the brakes were applied the man was fully eight or ten feet away from the tracks. I knew there were no signs there to warn the public that the train was being operated on the north track instead of the usual routing on the south track, and I knew also that there was no flagman or watchman there."

There were two other witnesses called by the plaintiff. One witness, a passenger on the train, testified that there was nothing unusual about the speed of the train; that the day was bright, clear, and sunshiny; that he did not notice any sudden application of the brakes, and that there was no gong or whistle that he noticed and no violent stopping of the train. However, this witness testified that he did note "the whistling which they always do when near to a

station,'' and also that on this occasion the train stopped before it got to the station and west of the point where it usually stops. From the testimony of this witness it is obvious that whatever whistling he heard could not have been for the station stop inasmuch as the train did not reach the station. But, irrespective of the reason for the whistling, the fact is that the whistle was sounded before the accident, thus to some extent corroborating the testimony of the motorman. The remaining witness, who conducted a tailoring establishment on Bond Street almost directly opposite the place of the accident, testified that his attention was drawn to the accident by hearing some women scream. He was then in the rear part of his shop. His testimony was that he heard no unusual whistling at the time of the accident or before. The testimony of this witness is negative in character. The testimony of the conductor to the effect that he did sound the whistle and bell is not contradicted by this witness inasmuch as he mentions nothing concerning the sounding of the bell, and his testimony is likewise consistent with the testimony of the passenger, who did hear whistling but thought it the usual signal for the station stop. It was on this state of the record that the nonsuit was ordered.

It is the contention of the appellant that the trial court was in error in granting the nonsuit, and the argument advanced is threefold.

Appellant urges that the evidence discloses negligence on the part of defendant, and that there is no sufficient showing of contributory negligence on the part of decedent to bar the action. Lastly appellant urges that if it is determined that decedent was clearly guilty of contributory negligence, nevertheless, under the facts as shown, it is a case for the application of the doctrine of ''last clear chance,'' and that upon the application of that rule the right of recovery is apparent.

The argument of appellant goes only to the extent required on this appeal; that is to say, his argument is that if the evidence, viewed in its most favorable light, leaves the slightest uncertainty, then the question should have been submitted to the jury.

Conceding this for the present, we do not go to the extent of holding that a reviewing court must go the length of dis-

torting testimony from its natural meaning, or snatching at chance phrases appearing at intervals in the testimony. It is not the function of this court to make uncertainty from a record in itself clear and intelligible. Nor do we intend so to do.

Appellant contends that the law of "Stop, look and listen" does not apply in this case for the reason that the train in question here does not come within the class to which such law applies. However, it is conceded by appellant that decedent was still held to the exercise of ordinary care. ■ Then, going further, he contends that the presumption of law to the effect that a person takes ordinary care of his own concerns in and of itself is sufficient in the case to present such a conflict of fact as to demand the submission of the case to a jury. In support of this claim the following cases are cited: *Fleener* v. *Oregon S. L. R. R.,* 16 Idaho, 781 [102 Pac. 897]; *Crabbe* v. *Mammoth Channel Gold Min. Co.,* 168 Cal. 500 [143 Pac. 714]; *Drouillard* v. *Southern Pac. Co.,* 36 Cal. App. 447 [172 Pac. 405]; *Ross* v. *San Francisco-Oakland T. Rys.,* 47 Cal. App. 753 [191 Pac. 703]; *Walker* v. *Southern Pacific Co.,* 38 Cal. App. 379 [176 Pac. 175]. A careful reading of these cases will disclose that this theory of appellant finds little support therein. True, detached portions of the opinions would seem to uphold in part the contention made, but in each case the language of the court seems to guard expressly against such an unqualified rule as is here contended for. The full effect of the rule announced in the cases cited is no more than to establish the doctrine that where there is no evidence adduced concerning the conduct of a person under given conditions the presumption that he exercised ordinary care will arise. At best the presumption is a disputable one; and where the plaintiff, as here, presents a case overwhelmingly destroying the presumption the effect thereof is as controlling as it would be in a case where the presumption had been destroyed by testimony offered by the defendant. To adopt as a rule of practice the presumption that the exercise of ordinary care always stands with the strength of independent evidence as against the proven facts, and thus produce in all cases a substantial conflict demanding the verdict of a jury, would mean that in no case

would the trial court be permitted to entertain a motion for a nonsuit. We are not prepared to announce such a rule. ■ From the facts of the case there can be but one conclusion. The train in question was proceeding in plain sight along a right of way unobstructed to the vision of decedent. It was proceeding at a lawful and ordinary rate of speed and giving warning of its approach. There was nothing in the position of decedent nor in his action to denote that he was in danger or that he was not in full possession of all of the ordinary faculties of sight and hearing. As soon as there arose the slightest doubt as to the intentions of the pedestrian or concerning the possibility of an accident the motorman used all diligence and care possible to avoid the same. Notwithstanding this the decedent, without the exercise of any care or caution, deliberately continued in his perilous course with the regrettable result noted. ■ The testimony of the witness to the effect that he heard no unusual sounds of warning means nothing. While it is true that negative testimony of this character oftentimes is regarded as sufficiently positive to create a question for the jury, the rule requires that it go further than is presented here. There is not one word concerning the opportunity of this witness to have heard a warning, if given; nothing to show the state of his attention or the work, if any, in which he was engaged. It could hardly be argued that the declaration of a witness ten miles off to the effect that he heard no bell would be considered any evidence at all on the subject, though it would meet the demands of appellant here as to being sufficiently negative. Further, the testimony of the witness here that he heard no *unusual* whistling is inherently weak in two particulars: First, standing alone, it is a mere conclusion with reference to what was usual and what unusual; and, secondly, it does not in any sense contradict the evidence of the motorman as to the sounding of the bell or gong.

■ There is nothing in the facts of the case to warrant any application of the last clear chance rule. The decedent was never in any place of danger until he stepped upon the track. Conceding, however, that he was approaching such a place and was unaware thereof, yet the facts show beyond controversy that as soon as such situation was known and as soon as such a situation was observed or could be ob-

served, the motorman employed every means possible to stop the train and avoid the accident (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36]).

We have gone carefully over the entire record presented, and if the contention of appellant could be sustained it would result in but one thing, namely, a return to the horse-drawn street-car. If it were incumbent upon the motorman of an interurban train to stop each time he saw a pedestrian leave the sidewalk and approach the tracks, then necessarily such trains as we are dealing with here would have to be abandoned. The courts have never been backward in holding railroads, street railways, or even automobile drivers, to a rigid rule of care. Always have the courts manifested a solicitude for the general safety and protection of the foot-passenger and others enjoying the right of travel along roads or highways used by trains and street railways. But the law likewise requires on the part of each person the exercise of some degree of care for his own protection.

In *Klusman* v. *Pacific Electric Ry. Co.,* 190 Cal. 441 [213 Pac. 38], it is said: "If the plaintiff knew that cars were operated on the middle track in both directions, she was bound in the exercise of ordinary care to look in both directions before stepping on the track. If she did not know that cars were operated in both directions upon the middle track she was negligent in assuming that cars were operated only in one direction without taking precautions to look in the other as well. From either point of view the conclusion of the trial court that she was guilty of negligence as a matter of law is correct."

In *Schooley* v. *Fresno Traction Co.,* 56 Cal. App. 705 [206 Pac. 481], the court says: "Surely under the language of the cases cited and under any rational system of law defendant could not be charged with a duty to anticipate that anyone would suddenly step from a place of safety on to the car tracks in the middle of a block, directly in front of an approaching street-car. We think that such gross negligence on the part of a pedestrian will bar all right of recovery for any injuries which he might sustain." In the case cited the court quotes from *Driscoll* v. *Market St. Cable Ry. Co.,* 97 Cal. 553 [33 Am. St. Rep. 203, 32 Pac. 591], as follows: "While, therefore, the owners of street railroads

are to be held to due care in the management of their lines, they, when exercising such care, are not responsible in damages to a person who, in a careless or reckless or absent-minded way, walks suddenly in front of a moving car and is injured before there is time to stop it. The person in charge of a car with a clear track before him has a right to assume that people will not suddenly undertake to cross in front of it, otherwise he could not make any headway, and no street-car line could be successfully operated, either for the profit of the owner or the convenience of the public. And the general rule is that where the negligence of the injured party is a contributing proximate cause of the accident he cannot recover damages.''

It is said in Ruling Case Law, volume 25, page 1285, ''However, where a foot-passenger walks or steps directly in front of an approaching car and is struck the instant he sets his foot between the rails there is but one inference that can reasonably be drawn from that fact, that is the inference of negligence.''

In *Green* v. *Los Angeles Ry. Co.*, 143 Cal. 31 [101 Am. St. Rep. 68, 76 Pac. 719], we find this language: ''We are unable to find in the record any excuse for the intestate's disregard of his obvious duty to himself to use his eyesight at the time when he could easily have discovered the danger of collision, which was up to the very moment he stepped upon the main track. Until then he had full control of his movements. He could by the slightest movement of his head towards the east have discovered the hazard, and by the slightest check of his movements avoided the same.'' See, also, *Green* v. *Southern Cal. Ry.*, 138 Cal. 1 [70 Pac. 926]; *Bailey* v. *Market St. Ry. Co.*, 110 Cal. 320 [42 Pac. 914]; *Jones* v. *Southern Pacific Co.*, 34 Cal. App. 629 [168 Pac. 586].

Giving to appellant every favorable inference that might be drawn from the record, and construing every ambiguous piece of testimony in his behalf, we still can find nothing sufficient to overthrow the court's order of nonsuit.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.