[Civ. No. 7538.   First Appellate District, Division One.—November 28, 1931.]

DELL CHOQUETTE, Appellant, v. KEY SYSTEM TRANSIT COMPANY (a Corporation) et al., Respondents.

Hubbard & Hubbard, M. Mitchell Bourquin and Clinton L. Markley for Appellant.

Brobeck, Phleger & Harrison, Maurice E. Harrison, Chapman, Trefethen, Richards & Chapman, Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Respondents.

THE COURT.—Appeal by plaintiff from an order and judgment of nonsuit in an action brought by her against the Key System Transit Company and the Atchison, Topeka and Santa Fe Railway Company for the recovery of damages for personal injuries suffered by reason of being struck

by a train of the latter company while in the act of crossing its track in the city of Berkeley.

The Key System Transit Company (hereinafter sometimes referred to as the Key System) operates a double track railway along and over certain public streets in the city of Berkeley, including part of Sacramento Street, using in such operation interurban trains and also ordinary streetcars. It does so by virtue of a franchise from the municipality. The Santa Fe Railway Company operates a single track of railroad for several blocks along Sacramento Street, also by virtue of a similar franchise, said track lying westerly from those of the Key System and both tracks being crossed by Ashby Avenue. At this avenue, or immediately adjacent to it, the Key System between its two tracks maintains a board sign bearing the announcement: "Key System. Ashby and Sacramento st. station. Sacramento St. Transbay Line." Other than this sign there is nothing indicating that this point is a stopping place for trains. There are no buildings or structures or station appliances of any kind either on or adjacent to the tracks or on the sidewalks opposite them.

The plaintiff was a passenger on the Key System, having crossed the bay from San Francisco on one of its ferry-boats and later boarded one of its interurban trains for the purpose of completing her journey. She was a woman about forty-six years of age, in good health and with no impairment of eyesight or hearing. She intended to leave the train at Ashby Avenue but by her inadvertence she did not do so when the train stopped there and was carried farther. Having discovered her error she at a subsequent stop of the train descended therefrom and boarded one of said Key System's street-cars, which brought her back to that point. She there alighted, addressing while doing so an inquiry to the conductor of the street-car as to the direction she should take to reach a certain location. This lay in a westerly direction from the stopping point at Ashby Avenue, and the conductor so informed the plaintiff and pointed in the desired direction.

The distance between the westerly rail of the Key System tracks and the easterly rail of the Santa Fe track is 10 feet 4 inches, and the minimum space between cars of the respective companies standing or moving upon said tracks is

5 feet 7 inches. The plaintiff upon alighting from the street-car stepped aside to make way for two persons who desired to get aboard. She paused a moment to receive the conductor's reply to her inquiry. The car had stopped with its front end about level with the near side of the Ashby Avenue crossing. The car was 39 feet in length, so this was approximately the distance the plaintiff was now standing from said crossing. At this point the two railway corporations maintained jointly a wigwag system, including a bell which rang as long as a train or car of either railway was within a city block of the crossing, and this wigwag and bell were now functioning. Having concluded her conversation with the conductor the plaintiff turned and, proceeding westerly, stepped upon the track of the Santa Fe Railway. From the point at which she alighted and extending to the crossing mentioned the surface of the ground was smooth and constituted a convenient path to the crossing, and was in general use as such. From here also there was an unobstructed view southerly for several blocks of the railway tracks of the defendants. The rails of the Santa Fe track except at crossings projected their full height above the ground, and the space between the rails was somewhat rough and uneven. According to the plaintiff's testimony, before attempting to cross said track she glanced casually to her right, that is, to the north, and did not at all look to the south, nor did she notice the track at all although she had to step over the projecting rails, nor did she hear any noise of a train nor the ringing of any bell. At the moment she stepped on to the Santa Fe track a train was approaching thereon from the south the locomotive of which was not more than 40 feet from her and traveling, according to the testimony of the engineer, at about 18 miles an hour, or, according to the estimate of a witness for the plaintiff based upon the distance the train continued in movement after application of the brakes, from 30 to 35 miles an hour. The plaintiff immediately became aware of her peril and endeavored by a hasty movement to complete the crossing of the track. She was unfortunately unable to do so in time and was struck by the pilot of the locomotive and seriously injured. A Santa Fe train passed this point every day about the same time traveling north. Its engineer on this occasion had perceived

the street-car when several blocks distant from it, and had seen the plaintiff talking to the conductor after alighting therefrom. According to his testimony, immediately the plaintiff started to walk toward the Santa Fe track he gave several short blasts of the whistle, closed the throttle of the locomotive and applied the brakes. The locomotive, however, being but 40 feet distant from the plaintiff, and traveling at least 18 miles per hour (or about 27 feet per second), and the testimony showing that a period of at least three seconds must elapse from the time the engineer commences to close the throttle and apply the brakes before the latter begin to exert any effect on the speed of the train, such speed could not be diminished in time to avoid injuring the plaintiff. At the time of the impact she had almost succeeded in clearing the track, being struck by the pilot bar of the locomotive near its left end. The train consisted of locomotive, tender and six empty cars, and came to a stop 425 feet from the place at which the plaintiff was struck.

In granting the defendants' motion for nonsuit the trial court rendered a written opinion, from which it appears that the ground of its action was its conclusion that the conduct of the appellant in attempting to cross the Santa Fe railway track without any effort to ascertain whether there was a train approaching from the south, and without listening for warning bells or the noise of trains or cars which might be approaching, constituted negligence as a matter of law; that such negligence was the proximate cause of her injury, and that there was no evidence which would support a verdict or finding that the defendant Santa Fe Railway Company had a last clear chance to avoid the collision.

The court applied the "Stop, look and listen" rule; and it is urged by the appellant that it erred in doing so, and that the question whether the appellant was negligent in attempting to cross the track as she did should have been left to the jury.

■ It is the general rule in California that a person who approaches railroad tracks and fails to stop, look and listen before attempting to cross them is negligent as a matter of law (*Holmes* v. *Southern Pac. Coast R. Co.*, 97 Cal. 161 [31 Pac. 834]; *Bailey* v. *Market Street Cable R. Co.*, 110 Cal. 320 [42 Pac. 914]; *Klusman* v. *Pacific Elec. R. Co.*,

190 Cal. 441 [213 Pac. 30]; *Trulson* v. *Southern Pac. Co.,* 42 Cal. App. 404 [183 Pac. 686]; *Smith* v. *Pacific Elec. R. Co.,* 66 Cal. App. 485 [226 Pac. 626]; *Richardson* v. *Southern Pac. Co.,* 88 Cal. App. 648 [263 Pac. 1039]). This rule also prevails in other states, and many cases could be cited therefrom, but it is unnecessary to do so.

As well established as the general rule is an exception thereto that it does not apply at railway stations. The reason upon which the exception is based is variously stated in the cases, and it amounts to this: That at railway stations it is frequently necessary for passengers to cross the tracks in order to board a train or car, or to reach the exit to the public street after disembarking; that this entails a danger which is ever present and is known to the carrier; that the carrier has control of its own premises, and there is cast upon it the duty to operate its trains at such places so as not to endanger unnecessarily its patrons or persons properly using its premises, and that there thus arises an implied assurance from the carrier that such crossing may be made in reasonable safety. In such case the strict rule of "stop, look and listen" is not applied. The person using the premises, however, is not absolved from all care, but it will be left to the jury to say whether under the circumstances he acted as a reasonably prudent person (*Wilkinson* v. *United Railroads,* 195 Cal. 185 [232 Pac. 131]; *Chicago, R. I. & P. R. Co.* v. *Stepp,* 164 Fed. 785 [22 L. R. A. (N. S.) 350, 90 C. C. A. 431]; *Sonier* v. *Boston etc. R. Co.,* 141 Mass. 10 [6 N. E. 84]; *Richmond etc. R. Co.* v. *Powers,* 149 U. S. 43 [37 L. Ed. 642, 13 Sup. Ct. Rep. 748, see, also, Rose's U. S. Notes]; *Terry* v. *Jewett,* 78 N. Y. 338).

This exception to the general rule applies, however, only to premises which may fairly be considered as stations. It is true that it is not always necessary that there should exist platforms or structures, although these are usually involved; but there must exist some element or some disposition of the premises carrying an implied assurance that the tracks may be crossed in safety (*Karr* v. *Milwaukee etc. Co.,* 132 Wis. 662 [122 Am. St. Rep. 1017, 13 L. R. A. (N. S.) 283, 113 N. W. 62]; *Terrill* v. *Michigan United Traction Co.,* 204 Mich. 652 [171 N. W. 340]).

In the case at bar we think it clear that there was no evidence in the case to go to the jury that the stopping

place at Ashby Avenue was a station in any true sense. But even if it be so considered the territory comprising it was limited to that occupied under its franchise by the Key System Transit Company and for the purpose of the operation of its interurban trains. But. the plaintiff was a passenger on an ordinary street-car of the company which stopped at this point only as it stopped at any street crossing along the route of the line as required by a boarding or alighting passenger. Moreover, she was not injured on the premises comprising the so-called station but after she had left those premises. This point was no stopping place for the trains of the Santa Fe Railway Company, on whose track the collision occurred and which was occupied and operated by it under a different and independent franchise. There existed no relationship between the plaintiff and the Santa Fe Railway Company. That company had not invited the plaintiff to cross its track and had given no implied assurance that she might do so in safety. Its track lay upon the public street and was an open and visible sign of danger. In that respect it was no different from other dangers of the street arising from street-cars, automobiles or other vehicles, against which a person crossing it must constantly guard.

In urging her contention that the premises here involved constitute a station the appellant relies strongly on the cases of *Wilkinson* v. *United Railroads,* 195 Cal. 185 [232 Pac. 131], and *Karr* v. *Milwaukee etc. Co., supra.* The first named case perhaps goes as far as any in dispensing with the characteristic features of a station and applying the station rule; but there, as pointed out in the opinion, there was a structure used by passengers as a waiting-room; and the fact is emphasized that this waiting-room was situated so near to the track that the plaintiff in that case (who, as in this, had brought suit for personal injuries) had only taken one step out of it when she was struck by a passing electric car. Attention is also called to the fact that there were no windows or openings in either end of this structure, so that the approach of the cars could only be observed by leaving it or protruding one's head from it in order to get a view of the track to right or left.

In the Karr case the carrier had installed a device for the use of passengers in signaling trains to stop, it being located upon a pole between the tracks so that a person had to cross a track to reach the signal and then recross it in order to board the train. The necessity for the passenger to cross the track arising from the location by the carrier of the device in question carried of course an implied assurance to him that he might do so in reasonable safety, so that it became a question for the jury to say whether in doing so he had exercised due care.

That the premises constituted a station not only with respect to the Key System Transit Company but the Santa Fe Railway also, notwithstanding that it operated its trains upon an independent right of way and that it had not established any stopping place there, the appellant cites the case of *Chicago, R. I. & Pac. R. Co.* v. *Stepp*, 164 Fed. 785 [22 L. R. A. (N. S.) 350, 90 C. C. A. 431]. There the defendant carrier was held to be negligent in running its train through a station at a speed of 40 to 50 miles an hour. There was no dispute that the premises constituted a railroad station, and the station rule was applied. The defendant was not the owner of the track, but ran its trains over it by virtue of contract with the Burlington etc. Railroad, which owned it. The Rock Island Company attempted to defend on the ground that the person injured was not its passenger but a passenger of the Burlington road; but it was held that in using the station grounds for the passage of its trains it was under the same obligation as the owner of the track to all persons boarding or leaving the trains at that station. The difference in principle between that case and the one at bar is obvious.

As already pointed out, the plaintiff was a passenger upon a street-car of the Key System, and alighted from the car in a public street at the Ashby Avenue crossing. It is well settled that the station rule has no application to stopping places of street-cars upon the public streets. A passenger upon such a car ceases to be such when he has safely alighted upon the public street and clears the car from which he alights. From that moment he is no more than an ordinary traveler and must be regarded as such, and the degree of care he must exercise in crossing the street is the same as that imposed upon any traveler, and

consequently the "stop, look and listen" rule applies in full force. "As a general rule a passenger, on alighting from a street-car and attempting to cross a track parallel with the one on which the car from which he alighted is running, is bound before crossing the track to look carefully for the approach of a car upon such parallel track, and his omission to take any precaution is not justified by the failure of the motorman on the approaching car to ring the bell or give any signal of his approach." (Nellis on Street Railways, 2d ed., 775.)

The difference between the status of a passenger on an ordinary railroad and one alighting from a street-car is thus pointed out in 4 Ruling Case Law, page 1047: "The general rule just considered that in the case of a carrier having exclusive control of its tracks and stations one traveling may still retain the status of a passenger after alighting from the carrier's vehicle, is from the nature of things not applicable to carriers not so situated, as, for instance, persons traveling on street railway cars. While a passenger attempting to alight from a street-car remains a passenger until he has accomplished the act of alighting in safety, and the carrier owes to the passenger attempting to alight that very high degree of care and attention which the law puts upon it generally to the end of promoting the safety of its passengers, and will be liable for negligent injury to the passenger while so alighting, it is the generally accepted view that one who has alighted from a street-car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway and subject to all the duties and obligations imposed upon such travelers, and the railway company is not responsible to him as a carrier for the condition of the street or for his safe passage from the car to the sidewalk."

Cases applying the rule are *Creamer* v. *West End St. R. Co.*, 156 Mass. 320 [32 Am. St. Rep. 456, 16 L. R. A. 490, 31 N. E. 391]; *Everett* v. *Los Angeles etc. R. Co.*, 115 Cal. 125 [34 L. R. A. 350, 43 Pac. 207, 46 Pac. 889]; *Boa* v. *San Francisco-Oakland Rys.*, 182 Cal. 93 [187 Pac. 2]; *Smith* v. *City Ry. Co.*, 29 Or. 539 [46 Pac. 136, 780]; *Indianapolis St. R. Co.* v. *Tenner*, 32 Ind. App. 311 [67 N. E. 1044]; *St. John* v. *Connecticut Co.*, 103 Conn. 641 [131 Atl. 396]; *Kentucky Traction & Terminal Co.* v.

*Soper,* 215 Ky. 536 [286 S. W. 776]; *Hammett* v. *Birmingham etc. R. Co.,* 202 Ala. 520 [81 South. 22].

■ It is also contended by appellant that the Key System Transit Company was negligent in failing to provide the plaintiff with a safe place to alight, and that this question should also have been left to the jury.

In this regard there is no dispute as to the facts. As we have seen, the width of the space upon which the plaintiff alighted between the tracks of the respective railways was 10 feet 4 inches; and the minimum space between the standing car of the Key System and the Santa Fe train in passing was 5 feet 7 1/16 inches. The plaintiff was not injured in this space but after she had voluntarily left it. Had she looked and perceived the approach of the train, and been at all apprehensive of danger by reason of its proximity, she could have stood close to the standing street-car, or, standing as she was at the rear end of the car she could have stepped behind it and thus increased the distance from a passing train. No case has been cited in which such a large space between passing cars has been held to be unsafe, and there are many in which the space involved was much less (*Zolkover* v. *Pacific Elec. R. Co.,* 81 Cal. App. 772 [254 Pac. 926]; *Ross* v. *Pacific Elec. R. Co.,* 39 Cal. App. 658 [179 Pac. 538]; *Indianapolis St. R. Co.* v. *Tenner,* 32 Ind. App. 311 [67 N. E. 1044]).

■ Appellant also urges that the Key System was negligent in not warning her of the approach of the Santa Fe train at the time she alighted from the car, and that this also was a question for the jury.

The precise question has been decided contrary to appellant's contention, and the rule is stated at 10 Corpus Juris, page 910, where it is said: "There is no duty to warn a passenger of his danger where the conditions which constitute the danger are as observable by him and apparently are as obvious to him as to the employees of the carrier."

It was held in *Chesley, Admr.,* v. *Waterloo etc. Co.,* 188 Iowa, 1004 [12 A. L. R. 1366, 176 N. W. 961], that a street railway company which permits a passenger to alight from a car at a place not ordinarily used in discharging passengers and where many automobiles are accustomed to pass is not bound to warn him of the danger of passing cars nor to protect him from such danger after he has left

the car. The court said: "It is obvious that to include within the duties of the carrier toward its passengers the exercise of the highest degree of care to protect him from dangers not only while the relationship of carrier and passenger exists, but after it has ceased, would be extending the obligations and duty far beyond that embraced within the principles affecting such relationship heretofore announced and applied, for it would require a caution and warning in every instance where a passenger left the car in a busy street, and impose a liability for failure to do so if injury resulted from the act of a negligent automobile driver before the passenger had safely reached the curb. . . . Courts have differentiated between the duties of a street car company to its passengers and a commercial railway in so far as a duty rests upon them to furnish safe passage to and from a car. From the nature of things a street car company cannot discharge those duties with respect to passengers. It has no control over the streets or traffic upon the streets; it has no stations or platforms and can erect none upon the street. From the curb to the car is a public place open to travel by all, and over it the company has no control or jurisdiction." That there is no such duty to warn passengers of dangers they may encounter after leaving a street-car see, also, *Oddy* v. *West End St. R. Co.*, 178 Mass. 341 [86 Am. St. Rep. 482, 59 N. E. 1026]; *Downs* v. *Northern State Power Co.*, 200 Wis. 401 [228 N. W. 471]).

█ Plaintiff also contends that the question whether the engineer, after he became aware that she was in a place of danger, used ordinary care to avoid injuring her should have been submitted to the jury.

According to his testimony the engineer had a clear view of the scene of the accident for several blocks and saw the car approach and stop. He also saw plaintiff alight and, after a pause, start to cross the track. When he saw her step into a place of danger he blew the whistle and turned off the throttle, the locomotive, according to his testimony, being then about 40 feet away. His testimony was conflicting as to when the brakes were applied, and it is uncertain whether this was done before or after plaintiff was struck. Paul McClendon testified that while looking from a window in his residence about 150 feet west of the

scene of the accident he saw plaintiff alight, after which she stood with her back to the witness talking to someone on the car. While thus engaged the locomotive approached and was about 100 feet from plaintiff when the witness first saw it. Plaintiff then turned and proceeded to cross the track. In answer to a question as to the approximate distance she was standing from the easterly rail of the track he said: "Well, my opinion is that if she had stood still the Santa Fe would hit her." Counsel moved to strike the answer as being a conclusion and not a statement of fact. The court in denying the motion said: "The answer may stand as showing the appearance to him that if she stood there she would have been struck. (To the witness): That is the way it appeared to you (Answer): Yes, sir." This witness testified further that when she started to cross and discovered the locomotive, in an effort to escape "she jumped and ran across the track", and toward the west, and "lacked but a little" of clearing the locomotive when she was struck. Plaintiff testified that as he descended the car steps she was questioning the conductor regarding the location of a certain block on Ashby Avenue; further, that when she alighted she stepped aside to enable other passengers to board the car and remained there facing the car "long enough to ask him (the conductor) another question". She then turned toward the west and approached the Santa Fe track "at an ordinary walk". After she had taken "two or three steps" she saw the "side front" of the locomotive, but was unable to state its distance away except that "it was right on" her. She testified that she heard no bell or whistle and appears not to have been aware of her danger before she saw the locomotive, nor was she able to fix her position when she first saw it. According to the street-car conductor, after she had alighted and had moved aside to make way for other passengers she stood clear of the car and about "a step back". This witness further testified that he saw her step upon the Santa Fe track, and that when the locomotive whistle sounded she hesitated and then moved quickly, apparently in an effort to escape; also that from five to ten seconds elapsed between the sounding of the whistle and the time she was struck. In view of the conceded width of the space between the respective tracks of defend-

ants and that between passing cars it is manifest from plaintiff's own testimony that, regardless of how she appeared to the witness McClendon during her conversation with the conductor, she was not then in danger, nor did she reach a place of danger until she had taken several steps to the west. It was further testified, however, that the overhang of the locomotive was from 2 feet 8 inches to 2 feet 10⅜ inches; also that plaintiff was struck by the pilot beam (which was the widest part of the locomotive), the portion of the beam with which she came in contact, according to the engineer, being about 1 foot from its extreme westerly end. As stated, the engineer testified that the train was traveling about 18 miles per hour, and there is also evidence that the application of the brakes would have diminished its speed within a distance of 39 feet.

There is nothing in this evidence, in our opinion, which would justify an inference that the engineer when he first saw plaintiff failed to exercise that degree of care which the law required of him. As soon as he perceived or realized that plaintiff might be inattentive to peril he sounded his whistle and at this time there was nothing to create a doubt as to whether he sincerely believed the calamity would be prevented by the activity of plaintiff. Under such circumstances he did all that was required of him. (*Basham* v. *Southern Pac. Co.*, 176 Cal. 320, 327 [168 Pac. 359]; *Billig* v. *Southern Pac. Co.*, 192 Cal. 357 [219 Pac. 992]; *Lobbett & Dean* v. *Oakland etc. R.*, 36 Cal. App. 641 [172 Pac. 1123]; 22 Cal. Jur., p. 352.)

The elements of the doctrine of last clear chance, which must be present in any given case in order to warrant the invocation of that doctrine, are these: 1. That the plaintiff has been negligent; 2. That as a result thereof she was in a situation of danger from which she could not escape by the exercise of ordinary care; 3. That defendant was aware of her dangerous situation and realized, or ought to have realized, her inability to escape therefrom; 4. That the defendant then had a last clear chance to avoid injuring her by the exercise of ordinary care; 5. That the defendant failed to avoid the accident by the use of ordinary care. (*Darling* v. *Pacific Elec. R. Co.*, 197 Cal. 702, 707 [243 Pac. 703].) Where a person is approaching a place of danger and all the warnings of such danger have

been given that reasonable care requires, those in charge of the dangerous instrumentality, seeing such person thus acting, are not obliged to presume, and it cannot be said that they act unreasonably in not presuming, that the person will continue his approach until he gets into the very place of danger, when it is obvious that he could at any time, with the least care, stop and avoid it. (*Billig* v. *Southern Pac. Co., supra.*) ▮ Even, therefore, if we assume that there is a conflict in the engineer's evidence as to when he applied the brakes, and there was just a possibility that the speed of the train might have been lessened and the accident avoided by their application when he first saw the defendant in the vicinity of the tracks, to charge the engineer with negligence under such circumstances would be carrying the doctrine of last clear chance beyond the limits of the decisions. (*Barnett* v. *Atchison etc. R. Co.*, 99 Cal. App. 310, 319 [278 Pac. 443].) As was said in *Barnett* v. *Atchison etc. R. Co., supra,* the doctrine was not devised as a last resort to fasten liability on a defendant. Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. Here plaintiff, when first observed by the engineer, was not in a position of danger, though perhaps approaching it. Until she placed herself in an inescapable, dangerous place, the engineer was under no obligation to apply the emergency brakes in the exercise of ordinary care. To so hold would be to charge him with the exercise of a greater degree of care than called for by the law. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259].) ▮ With the warning of the crossing bell, the noise and whistle of the approaching train, the engineer was justified in concluding that plaintiff would not proceed upon the track. The law presumes that a person possesses and will exercise his normal faculties. Absent mindedness or forgetfulness will not suffice as an excuse for the neglect of a person about to cross a railroad track. (*Young* v. *Southern Pac. Co., supra.*) In these days of congested travel, the practical operation of railway trains would be greatly impeded if the engineer was compelled to stop his train at crossings whenever he noticed persons approaching the track at right angles, in the belief that they might possibly attempt to cross the track directly in front of his train. When the

engineer first perceived that plaintiff was in a position of danger, the application of the brakes, considering the short distance and the speed of the train, would have availed plaintiff nothing. The last clear chance doctrine under the facts never came into operation and it was not error to fail to submit the question to the jury.

From what we have said, it follows that the judgments as to both defendants should be and they are hereby affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 28, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1932.

Curtis, J., and Waste, C. J., dissented.