[Civ. No. 11640. Second Appellate District, Division One.—January 24, 1939.]

FRED BEHNE, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

438

Edwin C. Boehler and Ezra Neff for Appellant.

Frank Karr, E. E. Morris, C. W. Cornell and O. O. Collins for Respondents.

WHITE, J.—Action for damages prosecuted by plaintiff as the surviving husband of Dora Behne, who lost her life when she was struck by one of defendant railway company's interurban trolley cars. At the conclusion of plaintiff's case the court granted a nonsuit. This is an appeal from the judgment.

Such of the facts as are necessary for a proper discussion of the case show that the decedent was struck down and fatally injured by a trolley car owned by defendant Pacific Electric Railway Company and operated by defendant Chaffin as motorman. The accident occurred where Washington Boulevard, running north and south, crosses the defendant railway company's track. The double tracks of the railway company run east and west on its private right-of-way on Venice Boulevard in Los Angeles County. Venice Boulevard is paved on both sides of the tracks, and crosses Washington Boulevard at right angles, while curbs separate the private right-of-way from the street. At the time of her death, August 16, 1934, the deceased was fifty-one years of age and enjoyed excellent health, except that she was so deaf that she could not have heard the train whistle; but her eyesight

was good. At about 2:50 o'clock on the afternoon of a clear day, the deceased was walking north, while the interurban car was proceeding west on the north track, upon which track deceased was struck. At the time of the accident the overhead wigwag signal was in operation. The motorman testified that the interurban car was approximately 140 to 150 feet from the east edge of Washington Boulevard when he first saw the deceased. The distance from the south rail of the eastbound track to the first or southern rail of the westbound track on which she was struck, is fourteen feet. When first noticed by the motorman, the deceased was ''looking straight ahead''. When he originally saw the deceased, according to the motorman's testimony, she was just stepping on to the south rail of the southern or inbound track. The car was ''coasting'' when he first saw the deceased. According to the motorman, he was ''blowing his whistle and watching''. When the car reached a point about eighty feet from where the deceased was leaving the inbound or southern track and was about nine feet from the outbound track upon which the car was traveling, the motorman, according to his testimony, concluded that the deceased had not heard the whistle or seen the car, whereupon he applied his emergency brakes in an effort to stop, at the time of which brake application the car was traveling about twenty miles per hour. There was some testimony to the effect that it takes from one to two seconds for the brakes to take hold after the air is applied, during which interval in the instant case the car had traveled about forty feet, when the brakes took hold and the car commenced to stop. According to the motorman, the car came to a stop about 120 to 150 feet from the point at which he first started to apply the brake handle.

Throughout the trial, as well as at the time the motion for a nonsuit was made, and now upon this appeal, appellant's counsel conceded the negligence of the deceased and relied exclusively upon the doctrine of the last clear chance. Therefore it becomes unnecessary to discuss the question of the sufficiency of the evidence to support a verdict in his favor upon the theory of negligence and the absence of contributory negligence; and the only question of concern here is the sufficiency of the evidence under the doctrine of the last clear chance. The trial judge held, and the respondents here contend, that the evidence shows that the deceased's negli-

gence continued up to the moment of the collision and proximately contributed thereto, by reason of which, argue respondents, the last clear chance rule does not apply and appellant cannot prevail.

It was held in *Center* v. *Yellow Cab Co.*, 216 Cal. 205, 207 [13 Pac. (2d) 918], that "the real issue in cases of this character is not whose negligence came first or last, but rather whose negligence, however it came, was the proximate cause of the injury. Whether or not, therefore, negligence is the proximate or remote cause depends upon the facts of the particular case. The doctrine of continuing negligence has no application unless the negligence is the proximate cause of the injury. If all the elements of the doctrine of the last clear chance are present and plaintiff's negligence becomes remote in causation, then the doctrine applies". (See, also, *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915].) Whenever any of the elements of the doctrine are lacking, plaintiff's negligence being continuing and contributory with that of defendant, a recovery is barred. In *Center* v. *Yellow Cab Co., supra,* the principle was definitely announced that "a defendant is never relieved of liability if he has it in his power to prevent injuring another, and this is so whether one is unaware of his peril by reason of his negligence or not".

Appellant's contention is that defendant motorman had an opportunity to avoid striking deceased and failed to exercise such opportunity. (*Townsend* v. *Butterfield*, 168 Cal. 564 [143 Pac. 760] ; *Palmer* v. *Tschudy*, 191 Cal. 696 [218 Pac. 36]) ; and in support of this claim directs us to testimony in the record given by a witness who had been employed by defendant railway company some nine years and who was familiar with the type of trolley car involved in this accident, as well as acquainted with the intersection here involved, and whose testimony is in part as follows:

"Q. . . . You have a track that is level and it is dry, no moisture on the rails, with one of those 900 type of cars," (this is the type of car involved herein) "and you are coasting with the power off, and the speed of your car is twenty miles per hour, within what distance can you stop that car by a service application of the brakes?

. . . . . . . . . . .

"A. I would say approximately ninety to one hundred feet.

"Q. . . . Now, then, assume the same situation except that

you apply your brakes in emergency . . . , within what distance could you stop that car under those circumstances?

. . . . . . . . . . . .

"A. I would say ten feet less; that would make it about eighty feet."

It was then stipulated that these "900" type cars are forty-nine feet, two inches in length. From the foregoing testimony, appellant argues that had the motorman applied the brakes when he first became aware of the position of danger in which deceased had by her negligence placed herself and from which she could not extricate herself by reason of ignorance of her peril, the trolley car would not have traveled from a point 80 to 100 feet west of the point of impact for a distance of approximately 178 feet.

We must therefore determine whether, under the circumstances here set forth, defendant motorman had the last clear chance to avoid the accident and failed to exercise ordinary care so to do. That the operator of the car should have had a *clear chance* implies that he should have had more than a bare *possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the deceased. It requires no citation of authority for the statement that the motorman had a right to assume that when deceased was approaching the railroad crossing she was in full possession of her faculties of sight and hearing, and that she would look and see the car, hear the whistle, or observe the swinging wigwag, and stop to let the car go by. Walking as deceased was, she could have stopped practically instantly at any time prior to stepping upon the north track, while no duty rested upon the motorman to attempt to stop until he concluded, or should have concluded in the exercise of ordinary care, that she was about to step on to his track. That the motorman, while traveling twenty miles per hour, applied his emergency brakes when approximately 80 feet from the deceased and while she was in the neighborhood of nine or ten feet from the north track, seems to us an indication of an exercise of care greater than the ordinary care required of him by the law; because in the final analysis, the doctrine of the last clear chance is really founded upon the humane principle that no one can wilfully and wantonly run down and injure another simply because the latter, through his own negligence, places himself

in a position of danger. It is when an act is committed with wilfulness and wantonness that contributory negligence on the part of the injured person is not an element which will defeat recovery. The motorman was under no duty to assume that the deceased would not do what many pedestrians do each day—walk toward a railroad track, stop within two or three feet thereof, and still not be in danger. It is true the motorman testified deceased was at all times "looking straight ahead", but this did not preclude her from seeing the wigwag in motion, and the motorman was not charged with knowledge that she was deaf and could not hear the whistle of the car. And even if we assume that there is evidence tending to contradict the testimony of the motorman as to when he applied the brakes, and there was just a possibility that the speed of the car might have been lessened and the accident avoided by their application when he first saw the deceased in the vicinity of the track upon which his car was traveling, yet to charge the motorman with negligence under the facts here present would be carrying the doctrine of last clear chance beyond the limits of the decisions, because, as was said in *Choquette* v. *Key System Transit Co. & Santa Fe Ry.*, 118 Cal. App. 643, 657 [5 Pac. (2d) 921]:

"Where a person is approaching a place of danger and all the warnings of such danger have been given that reasonable care requires, those in charge of the dangerous instrumentality, seeing such person thus acting, are not obliged to presume, and it cannot be said that they act unreasonably in not presuming, that the person will continue his approach until he gets into the very place of danger, when it is obvious that he could at any time, with the least care, stop and avoid it."

Deceased in the case at bar was not in a position of peril until she stepped upon the rail of the north track. Until almost the moment she was struck, then, no observation would have disclosed her in a position of danger, for she was not in such a position. In *Richardson* v. *Southern Pac. Co.*, 88 Cal. App. 648, it was said at page 655 [263 Pac. 1039]:

" . . . If it were incumbent upon the motorman of an interurban train to stop each time he saw a pedestrian leave the sidewalk and approach the tracks, then necessarily such trains as we are dealing with here would have to be abandoned. The courts have never been backward in holding railroads, street railways, or even automobile drivers, to a

rigid rule of care. Always have the courts manifested a solicitude for the general safety and protection of the foot-passenger and others enjoying the right of travel along roads or highways used by trains and street railways. But the law likewise requires on the part of each person the exercise of some degree of care for his own protection.''

■ With the warning of the swinging wigwag, the noise and whistle of the approaching trolley car, the motorman was justified in concluding that the deceased would not proceed on to the track. The law presumes that a person possesses and will exercise his normal faculties. Absent-mindedness or forgetfulness on the part of this deceased to observe with her eyes when she could not hear, will not suffice as an excuse for her negligence as she was about to cross a railroad track.

■ There is nothing in the evidence, in our opinion, which would justify an inference that the motorman, when he first saw the deceased, failed to exercise that degree of care which the law required of him. As soon as he perceived or realized that deceased might be inattentive to peril he sounded his whistle, and at this time there was nothing to create a doubt as to whether he sincerely believed the calamity would be prevented by the activity of the deceased herself. ■ Under the circumstances, he did all that was required of him. This being so, one of the elements required for the application of the rule of last clear chance was absent, and the case is therefore governed by the ordinary rules of negligence and contributory negligence. ■ In *Holmes* v. *South Pac. C. Ry. Co.,* 97 Cal. 161, at page 169 [31 Pac. 834], it was said: ''But the rule which permits a recovery notwithstanding some negligence on the part of the plaintiff or person injured is only properly applied in those cases where such negligence was the remote and not the proximate cause of the injury,— that is, where the negligent acts of the parties were independent of each other''; and when we apply this rule to the case here it is at once seen that even if it be conceded that there was negligence on the part of the railway company in the management of the trolley car at the time of and just preceding the accident, still the plaintiff here would not be entitled to recover, as such accident could not have occurred without the concurrent and active negligence of the deceased at the time. The defendant motorman was not the only one who could have prevented the accident, but, on the contrary,

if the deceased had herself used ordinary care at the time she could not possibly have been harmed by defendant's car, which was confined to the track upon which it ran. Practically up to the very moment she stepped upon the track and was struck by the car it was within her power to escape injury by stopping. The deceased being actually and contemporaneously at fault until practically the moment of the collision, and the motorman having used ordinary care to avoid injuring the deceased, the latter's original negligence continued to be the proximate cause of her injury and death, and bars recovery. (*Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, 41 [76 Pac. 719, 101 Am. St. Rep. 68]; *Giannini* v. *Southern Pac. Co.*, 98 Cal. App. 126, 132 [276 Pac. 618]; *Girdner* v. *Union Oil Co., supra*, p. 203.)

The judgment is affirmed.

York, P. J., and Doran, J., concurred.